**Robert D. McDonald v. J. W. Patterson & Co. et al.**

1. MECHANIC'S LIEN—*Substantial Compliance with the Contract Sufficient.*—A substantial compliance with the terms of the contract for the construction of a building is all that is required of a contractor in order to enable him to avail himself of the benefits of the statute relating to mechanic's liens.

2. INTEREST—*Allowance of, to Sub-contractors.*— The allowance of interest to the principal contractors for the time given in the decree for a lien is proper under the statute allowing interest on money due upon a contract in writing, and where such contract inures to the benefit of the sub-contractors, it is proper to allow them interest also.

3. FEES AND SALARIES—*Master in Chancery.*—By Section 20, Chapter 53, entitled Fees and Salaries, masters in chancery are allowed for taking and reporting testimony under order of court : fifteen cents per 100 words; and for examining questions of law and fact in issue by the pleadings, and reporting conclusions, wherever specially ordered by the court, a sum not exceeding ten dollars ($10).

4. SAME—*Master's Fees in Counties of the Third Class for Examining Questions in Issue.*—In counties of the third class, masters in chancery are entitled to receive for examining questions at issue referred to them, and reporting conclusions thereon, such compensation as the court may deem just.

**Bill for Mechanic's Lien.**— Trial in the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Decree for complainants; appeal by defendants. Heard in this court at the May term, 1899. Affirmed in part. Opinion filed September 20, 1899.

D. D. EVANS, KIMBROUGH & MEEKS and EVANS & McDOWELL, attorneys for appellant.

W. J. CALHOUN, C. M. SWALLOW and H. M. STEELY, attorneys for appellees.

LOVE & JEWELL, attorneys for E. J. Ryan, Pullis Bros. Iron Co., Henry Boemler, assignee, and Abdill & Son, appellees.

O. M. JONES, attorney for John Doyle & Co., appellees.

JOHN H. LEWMAN, attorney for Carson & Co., appellees.

GEORGE F. REARICK, attorney for Chesley Bros., appellees.

M. W. THOMPSON, attorney for John A. Lewis and other appellees.

**Statement.**—The appellees J. W. Patterson & Co. filed in the Circuit Court of Vermilion County their petition against the appellant, Robert D. McDonald, to enforce a statutory lien against a certain lot owned by appellant and situated in Danville, Illinois, for a balance claimed to be due them from him for the material and labor furnished in erecting a

building upon the lot in pursuance of his directions and in accordance with a written contract between them, which is as follows:

"This agreement, made this fourth day of June, in the year one thousand eight hundred and ninety-five, by and between R. D. McDonald, of Danville, Illinois, party of the first part (hereinafter designated the owner), and J. W. Patterson & Co., of the same place, party of the second part (hereinafter designated the contractor):

Witnesseth, that the contractor, being said party of the second part, in consideration of the covenants and agreements herein contained on the part of the owner, being the said party of the first part, does hereby covenant, promise and agree with the said owner, in manner following, that is to say:

1st. The contractor shall and will well and sufficiently perform and finish, under the direction and to the satisfaction of Treat & Foltz, architects (acting as agents of said owner), all the work included in the mason work, stone and terra cotta setting, concrete work, cut stone, iron, fire-proofing, plastering, furnishing and setting of partitions, painting and glazing, electric wiring and bell, and speaking tubes, terra cotta, plumbing, gas fitting and sewer work, galvanized ironwork, and roofing, heating, marble and tile, and carpenter and mill work; the above items meaning and intending to cover all items in said drawings and specifications, agreeably to the drawings and specifications made by the said architects, dated April 1st, 1895, which are hereby made part and parcel of this agreement (copies of which have been delivered to the contractor), and to the dimensions and explanations thereon, therein and herein contained, according to the true intent and meaning of said drawings and specifications, and of these presents, including all labor and materials incident thereto, and necessary for the completion of said work; and shall provide all scaffolding, implements and cartage necessary for the due performance of said work.

2d. Should it appear that the work hereby intended to be done, or any of the matters relative thereto, are not sufficiently detailed or explained on the said drawings, or in the said specifications, the contractor shall apply to the architects for such further drawings or explanations as may be necessary, and shall conform to the same as part of this contract, so far as they may be consistent with the original drawings, and in any event of any doubt or question aris-

McDonald v. Patterson & Co.

ing respecting the true meaning of the drawings or specifications, reference shall be made to the architects, whose decision thereon shall be final and conclusive.

3d.   Should any alterations be required in the work shown or described by the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architects, and the sum herein agreed to be paid for the work, according to the original specifications, shall be increased or diminished, as the case may be.   In case such valuation is not agreed to, the contractor shall proceed with the alteration, upon the written order of the architects, and the valuation of the work added or omitted shall be referred to three (3) arbitrators, no one of whom shall have been or shall be personally connected with the work to which these presents refer, to be appointed as follows:   One by each of the parties to this contract, and the third by the two thus chosen; the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expense of such reference.

4th.   The contractor shall, within twenty-four hours after receiving written notice from the architects to that effect, proceed to remove from the grounds or building all materials condemned by them, whether worked or unworked, or take down all portions of the work which the architects shall condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications, and to the conditions of this contract.   The contractor shall cover, protect and exercise due diligence to secure the work from injury, and all damage happening to the same by his neglect shall be made good by the contractor.

5th.   The contractor shall permit the owner and architects, and all persons appointed by them, to visit and inspect the said work, or any part thereof, at all times and places during the progress of the same, and shall provide sufficient safe and proper facilities for such inspection.

6th.   The contractor shall and will proceed with the said work, and every part and detail thereof, in a prompt and diligent manner, and shall and will wholly finish and complete the said work according to said drawings and specifications and this contract, on or before the 20th day of November, A. D. 1895, and in default thereof the contractor shall pay to the owner fifteen dollars for every day that the said work shall remain unfinished after the date above set for its completion, as and for liquidated damages.

7th.   The owner shall not be liable to the contractor for any neglect, default or delay of any other contractor or

sub-contractor upon the said buildings. Should the contractor be obstructed or delayed in the prosecution or completion of the work by the neglect, delay or default of any other contractor; or by any alteration which may be required in the said work; or by any damage which may happen thereto by fire, or by the unusual action of the elements, or otherwise; or by the abandonment of the work by the employes through no default of the contractor, then there shall be an allowance of additional time beyond the date set for the completion of the said work; but no such allowance shall be made unless a claim is presented in writing to the architects or the owner at the time of said obstruction or delay. The architects shall award and certify the amount of additional time to be allowed; in which case the contractor shall be released from the payment of the stipulated damages for the additional time so certified, and no more, the contractor may appeal from such award to arbitrators constituted as provided in article 3d of this contract.

8th. The contractor shall not let, assign or transfer this contract, or any interest therein, without the written consent of the architects.

9th. The contractor shall make no claim for additional work unless the same shall be done in pursuance of an order in writing from the architects, and notice of all claims shall be made to the architects in writing within ten days of the beginning of such work.

10th. The contractor agrees that if he shall delay the material progress of the work so as to cause any damage for which the owner shall become liable (as above stated), then he shall make good to the owner any such damage over and above any damage for general delay herein otherwise provided; the amount of such loss or damage in either case to be fixed and determined by the architects, or by arbitration, as provided in article 3d.

11th. The contractor shall cover, protect and secure the work from damage or injury by the weather, and all damage happening to the same by weather or otherwise (damage by fire excepted) shall be borne by the contractor. And the contractor shall also bear and repair all loss or damage by fire, except damage to work actually performed on the building, or to materials actually incorporated in the building at the time of the fire.

12th. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of material of a proper quality, or fail in any respect to prose-

cute the work with promptness and diligence, or fail in the performance of any of the agreements on his part herein contained, such refusal, neglect or failure being certified by the architects, the owner shall be at liberty, without its being obligatory upon him, after three days' written notice to the contractor, to supply any such labor or materials, and to deduct the · cost thereof from any money due or thereafter to become due to the contractor under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also have the option to terminate the employment of the contractor for the said work, and to enter upon the premises and take possession of all materials thereon, and to employ any other person or persons to finish the work and provide the materials therefor; and in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work such excess shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance the contractor shall pay the difference to the owner.   The expense incurred by the owner, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects.

14th.   And it is hereby mutually agreed between the parties hereto, that the sum to be paid by the owner to the contractor for said work and material, shall be twenty-six thousand and eight hundred and thirty-one dollars ($26,831). This includes all the work below grade for which separate specifications have been furnished, one hundred and fifty dollars ($150) having been deducted for old brick (an allowance for the difference in the pressed brick, used also for rubble stone, now on the premises, will be made to the owner as per price agreed upon between the parties and deducted from the contract price), subject to additions or deductions on account of alterations as herein provided, and that such sum shall be paid in current funds by the owner to the contractor on presentation of certificates issued by the architects.   The payment for this will be made in the following manner:

I.   Four thousand dollars to be paid when the second story floor joists are laid.

. II.  Three thousand six hundred dollars to be paid when the fourth story floor joists are laid.

III.  Three thousand five hundred dollars when roof is on and fire-proof floors are in place.

IV.  Four thousand five hundred dollars when partitions are set, plastering done, stairs in and glazed sash in building.

V.  Four thousand dollars when building is ready for painters.  Total, $19,600.

The balance of contract price to be paid when building is completed and accepted.

It being understood that the final payment shall be made within ten days after this contract is completely finished; provided, that in each of the said cases the architects shall certify in writing that all the work, upon the performance of which the payment is to become due, has been done to their satisfaction; and provided, further, that before each payment, if required, the contractor shall give the owner good and sufficient evidence that the premises are free from all liens and claims chargeable to the said contractor; and further, that if at any time there shall be any lien or claim for which, if established, the owner, or the said premises, might be made liable, and which would be chargeable to the said contractor, the owner shall have the right to retain out of any payment then due, or hereafter to become due, an amount sufficient to completely indemnify him against such lien or claim, until the same shall be effectually satisfied, discharged or canceled.  And should there prove to be any such claim, after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises, made obligatory in consequence of the former's default.

Fifteenth.  It is further mutually understood and agreed, between the parties hereto, that no certificate given hereunder by said architects to the contractor shall be deemed or taken to be conclusive upon the owner, nor as conclusive evidence of the performance of this contract, either wholly or in part, or bind the owner to make the payments therein certified to be due, as against any claim of the owner to the contrary ; and no payment made upon this contract shall be construed to be an evidence of any defective work.

Sixteenth.  And the said owner hereby promise and agree with the said contractor to employ, and hereby employs him, to provide the materials and to do the said work according to the terms and conditions herein con-

tained and referred to, for the price aforesaid, and hereby contract to pay the same at the time, in the manner, and upon the conditions above set forth.

Seventeenth. It is hereby expressly understood and agreed on the part of the said contractor and said owner, with S. A. Treat and Frederick Foltz, copartners doing business under the firm name and style of Treat & Foltz, the architects hereinbefore named, who are hereby made parties to this contract for the purposes of the following provisions and agreements, as parties of the third part, in consideration, in part, of furnishing and supplying the plans and specifications above mentioned, and supervising the work to be done under this contract.

First, that said plans and specifications and all copies thereof, shall be and remain at all times hereafter the property of said third party, and the same shall not be duplicated nor used by either of the other parties hereto in or for the construction of any other building or other work than that to which this contract relates. Second, that said owner shall look to said contractor only, who alone shall be liable or required to respond to said owner for or by reason of the defective performance of this contract, in whole or in part, on the part of said contractor, or for or by reason of any defective or unskillful work or labor done, or any defective or improper material used, in performing or executing the same by said contractor, or for or by reason of any other non-fulfilment of the provisions and agreements herein, or for any loss or damage resulting therefrom, their supervision to the contrary notwithstanding.

Eighteenth. And the said parties, for themselves, their heirs, executors, administrators and assigns, do hereby agree to the full performance of the covenants and agreements herein contained.

This contract signed in triplicate.

In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written.

R. McDONALD.          [SEAL.]
J. W. PATTERSON & Co. [SEAL.]"

And setting up further that extra work was done and material furnished by them, in and about the building during its construction, at the special request of McDonald.

The petition further averred that Patterson & Co. commenced work on the building immediately after the date of the written contract, and completed it on the May 5, 1896,

after which McDonald accepted it; that Patterson & Co. filed with the Circuit Court of Vermilion County, their claim for a lien upon said lot, duly verified as required by statute; and that McDonald paid them only $12,324.28 on account of said labor and material, which leaves a balance due them therefor of $15,011.47, with interest and attorney fees, for all of which they claim a lien in pursuance of the statute, etc.

The appellees, other than Patterson & Co., by leave of court, intervened in the proceedings thus instituted, and became parties thereto, and set up that they, as sub-contractors under Patterson & Co., had respectively furnished labor and material which went into said building, and each claimed a lien for the amount due him or them respectively therefor.

The appellant answered the petition and intervening petitions, in which he admitted he owned the lot described therein; that he had made the written contract with Patterson & Co. as claimed, but denied that Patterson & Co. or the intervenors had erected on said lot the building agreed to be erected thereon by the terms of the written contract, but had constructed thereon a building greatly inferior to the one contracted for; that he had paid them more money for the building so constructed than the same was reasonably worth; and that he was not indebted to Patterson & Co., or the intervenors, or any of them, for anything whatever.

Replications were filed to the answer, and the court referred the case to the master in chancery to take evidence, state an account between the parties, and report to the court his conclusions upon the law and the facts in the case.

The master took the evidence and made up his report, showing his conclusions upon the law and facts in the case; which report is substantially as follows:

That on June 17, 1895, Patterson & Co. contracted with the Henry Taylor Lumber Co., for $2,955, to furnish the lumber and mill work; that June 14, 1895, they contracted

McDonald v. Patterson & Co.

with Wiseman & Son, for $997, to furnish all work included in the painters' and glaziers' specifications; that June 14, 1895, they contracted with E. J. Ryan, for the sum of $921, to do all the gasfitting, plumbing and sewerage; that June 11, 1895, they contracted with Doyle & Co., for $1,850, to do all the plastering and furnish and set all the partitions; that June 14, 1895, they contracted with Pullis Bros. Iron Co., for $4,750, to furnish all the material and do all the work included in the iron plans and specifications; that on June 14, 1895, they contracted with Carson & Co., for $1,252, to perform and finish all the work included in the heating specifications; and that some time in June they made a verbal contract with John A. Lewis, for $4,733, to do all the work in the miscellaneous plans and specifications.

That Chesley Bros., Bireline & Orr, M. Gaynor and Abdill & Son furnished material and did work.

That all these persons filed their liens in this case and ask to have them determined.

Finds that McDonald, without certificates, paid as follows:

September, 1895...............................$4,000 00
November, 1895............................... 3,600 00
December, ................................... 3,500 00
February, 1896............................... 328 00
March, 1896.................................. 541 35
Electric Co., claim........................... 646 00

Also for divers extras, without certificates, or evidence that the property was free from liens.

Finds that about a week before the completion of the building, Treat, of Treat & Folz, as a representative of McDonald and at his request, came to Danville and examined the building, and after examination made no objection to the contractors as to the kind and quality of the work or material. That he issued and delivered to McDonald two certificates, each for the sum of $4,000; and that certificates were issued to Doyle & Co. for $1,200 balance in full, and $154 for extras; also to the Terra Cotta Co. for amount due it.

That McDonald has refused to recognize or accept these certificates.

That without certificates from the architects, numerous changes and alterations were made from the plan and specifications, by agreement between the owner and contractor, requiring more material and more work—among others, a larger and heavier wall was put under the building on the east and north sides, etc.

That Patterson & Co. applied to McDonald for a settlement of the balance due; that McDonald requested Patterson & Co. to present him with a certificate of the architects that the work had been completed to their satisfaction; that thereupon Patterson & Co. did apply for the certificate and requested Treat & Foltz to come and examine the building; that Treat & Folz replied that they were in the employ of McDonald, and would not come to Danville unless they were requested by McDonald, etc.

That therefore the master concludes that the provisions in the contract relative to the architects' certificates and the good and sufficient evidence were waived by McDonald; and that Patterson & Co. had done everything in their power to obtain the certificates, and were only prevented by the refusal of Treat & Foltz to come and examine the building.

The master further finds that prior to the completion of the building, when about all but the painting was done, Mater, of Patterson & Co., went to Walton, superintendent for McDonald, and asked if there were defects, or anything remaining undone; that Walton read a list of things he wished done, and that Mater went over the building and did the work requested. That Mater again asked Walton if there was any other changes to be made, signifying his willingness to do the same.

The master finds that Patterson & Co. were delayed in the construction of the building a period of one hundred and sixty-nine days; that the delay was caused partly by the unusual action of the elements, partly by changes, and partly by the default of Pullis Bros. Iron Co., one of the contractors, in furnishing material.

That at the time of the delay Patterson & Co. repeatedly presented claims to the architects for additional time, but that the architects refused to grant additional time.

That sixteen days delay was caused by McDonald being compelled to tear down and rebuild the north and east foundation walls, and eighteen days in extending and changing the lavatory, and thirty-five days by the unusual action of the elements, and one hundred days by the default of Pullis Bros. Iron Co.

That there is some defective work in the building, caused by being done in midwinter, owing to the default of Pullis Bros. Iron Co. For example, the painting and plastering.

That McDonald was injured by the default of Pullis Bros. Iron Co., and that Pullis Bros. Iron Co. should be held responsible for at least one hundred days, at $15 per day ($1,500), which the master estimates is about the rental value McDonald could have derived from the building.

The master finds that no sub-contractor has a lien; that the law relative to attorney's fees is not applicable in this case, but that the master has allowed interest on the balance found due in this case at five per cent per annum, and that the costs of this suit will abide its final decision.

Finds that Chesley Brothers have established a lien for $17.54, and that the amount should be deducted from the claim of Pullis Bros. Iron Co.

Finds that Bireline & Orr, sub-contractors, have no lien.

Finds that M. Gaynor, a sub-contractor, has no lien.

Finds that Abdill & Son have a lien for $203.79.

Finds that the contract between Patterson & Co. and the Henry Taylor Lumber Co. was for $2,955. That Patterson & Co. are entitled to credits amounting to $456.07, and that McDonald is entitled to $5 for repairing and veneering doors, leaving a balance of $2,693.93. Also finds that the Lumber Co. is indebted to Wiseman & Son for drayage and storage, $3.80.

Finds that Patterson & Co.'s contract with Wiseman & Son was for $997, and that Wiseman & Son have no claim for extras.

Finds that Wiseman & Son failed to place the Florentine glass required by specifications—allows a credit of $6.

That Wiseman & Son put in a smoked glass over the hotel entrance, and allows therefor $7.

Finds a defective job of puttying and allows a credit of $35.

Does not allow any credit for the condition of the painting on the basement wainscoting, because the defect was caused by the damp condition of the lavatory.

On the question of defective painting, rubbing and finishing, the master allows no credit.

Finds the balance for Wiseman & Son, $949.

Finds that there is due Wiseman & Son, from the Lumber Co., $3.80; from Patterson & Co., $13.68; from Van Sickle, for glass, $23.34, and cleaning windows, $7.90.

The master finds that the original contract between Patterson & Co. and Pullis Bros. Iron Co. was for $4,750, and that there are no extras.

That the amount due Pullis Bros. Iron Co. is $28.54, for which they are entitled to a lien.

That McDonald is not entitled to anything for the defective basement stairway nor for iron facia.

That Doyle & Co's. contract was $1,850, and $115 extras

That master finds that Doyle & Co. made written proposition to Treat & Foltz to do work charged as extra, amounting to $154, and accepted by Treat & Foltz. On this and other evidence the claim of $154 is allowed.

For a failure to plaster tile furring and columns in the basement the master allows damages, $10. Finds that Doyle & Co. failed to make the wainscoting of Acme cement and allows as damages, $75.

And for the defective plastering in the bank room, $100. That there is due Doyle & Co. $1,944, for which they are entitled to a lien.

Finds that Doyle & Co. are indebted to the contractors and sub-contractors, $7.80, $84, $47, $7.90, $294.13, for which no lien is allowed.

The master finds that the amount of the contract between

Patterson & Co. and John A. Lewis was $47.33, and between McDonald and Lewis, $9.43.

That the following extras in favor of Lewis have been admitted and are allowed:

Walling cellar window, $5; foundation for pilasters, $12; pilasters, $85; wall in basement, $10; work on basement room, $10; repairing flue, $17, and 1,000 paving brick used by Walton.

Master allows Lewis $50 extra for tamping and filling boiler room, on the ground that Stumble was the agent of McDonald. Then allows Lewis $75 in lieu of $250, claimed for taking out earth and tamping the basement.

Allowed for taking down old chimney on adjoining building, $7.70.

Finds that the total amount of contract and extras is $5,955.20.

Total credits allowed against Lewis, $3,857.40.

Credits litigated and allowed in favor of Patterson & Co., against Lewis, consisting of twenty items:

The master finds that, in addition to the $500's worth of Homan brick, McDonald furnished 3,000 radius brick, for which Lewis should be charged $25 per thousand.

Master allows McDonald a credit of $75 for cobble stone used by Lewis in the foundation walls. Other allowances in favor of McDonald, $3, $6.40, $4.25.

Claimed by McDonald and not allowed:

Painting up flashing, $8.25; for defective concrete floors, $150; and $1,000 for soft brick used in the walls.

Master finds that coping was omitted, but claim not allowed because iron grating used instead. Claims for basement under hotel being too low, for not painting around windows, for failure to plaster area walls on outside, for defective foundation to column underneath dining room in hotel, not allowed.

The master finds that there is due Lewis, and that he is entitled to a lien for, $680.81.

Claims of Lewis against contractors and sub-contractors, consisting of nine items, litigated and allowed.

The master finds that the contract between Patterson & Co. and Carson & Co. was $1,252, and that Carson & Co. are entitled, as an extra, for indirect radiation, $60. Carson & Co. should be charged $300 for boiler omitted.

The master finds that the radiation put in by Carson & Co. is not sufficient, and allows $75 as a credit against Carson & Co., and for their failure to silver bronze pipes, $2.50; and for their failure to furnish and place radiator boards, $14—in all $391.50; and that Carson & Co. are entitled to a lien for $921.

Master does not allow other claimed damages, that is to say: Air vents misplaced, repainting, risers, sleeves omitted, re-covering steam pipes, repairing steam valves.

The master finds that the contract between Patterson & Co. and E. J. Ryan, for plumbing, gas fitting and sewerage, was $921; for extras, grease trap, $19.75; for removing wash bowls, $7. Total, contract and extras, $947.75.

Contra credits: The master finds that Ryan is chargeable with, for omission to cover water pipes, $24; for a failure to bronze pipes in bath rooms, $1.50; for omission to put in catch-basin provided for in specification, $15, and for difference in value of sewer-pipe from kind specified and kind put in.

Finds that total amounts of credits allowed is $54.30.

Finds that Ryan is entitled to a lien for $893.45.

The master refuses to allow the claims for cleaning sewer-pipes, $5.10; for omission of water closet in the bank room, $23; for improper setting of wash-bowl in bank room, $8.60, and for omission of laundry tubs, $83.00.

Refused to allow the difference between the one and one-half inch lead pipe prescribed, and the one inch lead pipe put in, and galvanized iron put in, but not prescribed.

Refused to allow for air chambers claimed to have been omitted; also traps under wash-bowls as prescribed, because one large trap was put in lieu of one under each bowl, as prescribed by specifications.

The master finds that the water closet tanks and seats are not what was provided in the specifications, but refuses to allow any damage because Ryan had a talk with Foltz,

and that Foltz told him (Ryan) that he (Ryan) could substitute some other tank.

Master also finds that the tanks were supported to the wall, according to the specifications.

Master also finds extras in favor of Patterson & Co. for changing maple to concrete floor, and single to double door, $58; for sawing off projection on old roof, $2; for grading hallway and putting in stone step, $5; for moving vault, $2.50; for furring wall in basement, $3.30; for extra work performed in the lavatory, $152; for extra plastering, $3.30; for the difference between iron and wooden lookouts, $40.50.

Total amount of extras allowed Patterson & Co., $266.60. The master finds the total cash payments by McDonald to Patterson & Co., $12,616.28.

Allowed against Patterson & Co., for refitting windows, $4.80; for bad condition of the windows and refitting them, $7, and the further sum of $12.50; for window omitted, $5; for omission of ornamental work on water closet in bank room, $12; for failure to properly finish pipe boxes, $5; for omission of concrete roofing, $57.08.

### NOT ALLOWED.

The master finds that in March, 1896, the building commenced settling; that the architects found that the east foundation wall would have to be reinforced; that thereupon Patterson & Co. were notified to reinforce the same, but they refused to do so. That thereupon Treat prepared plans to reinforce the foundation, and did reinforce the same.

The master further finds that the settling was caused, as alleged in the evidence, by one of two things: That the concrete footing was insufficient; or second, that the wall, as built by Olson, was insufficient; but the master finds that Lewis should not be held responsible, and that Patterson & Co. properly refused to reinforce the foundation.

The master refuses to allow any damage for claim of the building not being square.

Refused to allow any damage for the partitions not being

straight, for the light well being crooked, or for the halls being narrower than provided by the plans.

Refused to allow any damage for the iron in the fourth story not being covered with tile.

Refused to allow any damage for defective wood wainscoting, or for defective cut stone, or for marble threshold omitted.

Finds that sheet lead and tin were used instead of copper, as provided by the specifications, but allows no damage.

The master finds that the evidence shows that there are anchors at the ends of girders, and that there is evidence in this case that anchors have been put on the ends of I-beams, therefore no damage is allowed.

Finds that the plans and specifications required pronged tie-rods to be used between channel-irons and I-beams.

Finds that they were not used, but that other rods were used instead, and therefore allows no damage.

Finds that drips in window sills were required, but finds that window sills were so set that drips are not necessary, therefore no damage is allowed.

Finds that the iron was required to be painted; that it was not painted but dipped instead. No damage allowed.

Refuses to allow damages for using a stone step instead of an iron step at the base of iron stairway in the basement.

Refuses to allow any damage for angle for a sidewalk.

Refuses to allow anything for the salary of superintendents.

Finds that McDonald has been in possession of the building and enjoying the rents thereof since April 15, 1896.

The master's statement of account is substantially as follows:

CLAIM OF CHESLEY BROTHERS.

That from the evidence Chesley Brothers have established their claim for lien to the amount of $17.54 for angle-irons furnished to J. W. Patterson & Company, and that they are

entitled to a lien on this building for that amount, together with interest on the same from May 16, A. D. 1896, at the rate of five per cent.

### CLAIM OF BIRELINE & ORR.

That Bireline & Orr placed an iron panel under the stairway leading into the basement of this building; that the same is of the value of $32, but by reason of its having been furnished to the Pullis Brothers Iron Company, a sub-contractor of J. W. Patterson & Company, that the said Bireline & Orr are not entitled to a lien upon this building.

### CLAIM OF M. GAYNOR.

That M. Gaynor furnished lime and mortar to John Doyle & Company to the amount of $294.13, but that by reason of the said John Doyle & Company being a sub-contractor, the said M. Gaynor is not entitled and has not established a lien upon this building.

### CLAIM OF E. C. ABDILL & SON.

That from the evidence E. C. Abdill & Son furnished tile to J. W. Patterson & Company to the amount of $191.06, and that the said E. C. Abdill & Son furnished extra tile for the lavatory to the amount of $12.73, making a total of $203.79, for which sum said E. C. Abdill & Son are entitled to a lien upon this building, together with interest on the same, at rate of five per cent from May 16, A. D. 1896; that the extra tile amounting to $12.73, furnished for the lavatory, is included in the extra charge of $152 of J. W. Patterson & Company for extra work on lavatory, and that R. D. McDonald is credited with the same as against Patterson & Company.

### CLAIM OF HENRY TAYLOR LUMBER COMPANY.

Amount of the original contract (admitted)......$2,955 00
Credits admitted to be due J. W. Patterson &
    Company from the Henry Taylor Lumber Company, as follows:
1895,  September 14, cash......................$  50 00
        November 16, cash.......................   50 00

| | | | |
|---|---|---|---:|---:|
| 1895, | December 26, freight advanced.......;...... | $ 56 | 80 |
| | June 24, freight advanced................ | | 44 |
| | July 9, freight advanced................. | 2 | 79 |
| | July 20, freight advanced................ | 8 | 20 |
| | August 1, freight advanced.............. | | 50 |
| | September 3, labor paid.................. | 12 | 00 |
| | September 5, labor paid.................. | 3 | 00 |
| | September 5, lumber..................... | 4 | 20 |
| | September 14, freight paid............... | 1 | 98 |
| | December 11, freight paid................ | 8 | 97 |
| | December 11, altering frames............. | 1 | 25 |
| | December 16, freight paid................ | 72 | 00 |
| 1896, | March 14, cash paid...................... | 150 | 00 |
| | January 2, freight paid.................. | | 25 |
| | February 26, freight paid................ | 33 | 69 |

Total amount of credits allowed Patterson & Co. $456 07

Credit Due McDonald Against Henry Taylor Lumber
Company.

Damage to doors............................;.... $ 5 00
Making a total credit due J. W. Patterson & Com-
pany and R. D. McDonald against the Henry
Taylor Lumber Company of.................. 461 07

Recapitulation of the Claim of the Henry Taylor
Lumber Company.

Amount original contract......................$2,955 00
Amount of credits allowed..................... 561 07

Balance due the Henry Taylor Lumber Company.$2,493 93

He therefore finds that the Henry Taylor Lumber Com-
pany is entitled to a lien on this building for the sum of
$2,493.93, together with interest on that amount at the rate
of five per cent from May 16, A. D. 1896, until the date of
final decree in this case.

Also finds that the Henry Taylor Lumber Company is
indebted to J. Wiseman & Son for freight, drayage and stor-
age to the amount of $3.80.

McDonald v. Patterson & Co.

CLAIM OF THE PULLIS BROTHERS IRON COMPANY.

Amount of the original contract.................$4,750 00

Credits admitted to be due J. W. Patterson & Company against Pullis Brothers:

| | | |
|---|---:|---:|
| 1895, July 20, freight paid.....................$ | 41 | 45 |
| September 10, cartage 75c, freight $66.94.. | 67 | 69 |
| September 14, freight $7.39, anchors $9.75, hanging $2.50......................... | 41 | 74 |
| September 14, cash...................... 1, | 001 | 62 |
| September 14, angle-iron................,...... | 1 | 35 |
| September 17, cartage................... | 27 | 25 |
| October 5, labor........................ | 4 | 00 |
| November 15, cash...................... | 918 | 34 |
| November 15, freight paid............... | 159 | 62 |
| November 15, Chesley Brothers for angle-iron.................................. | 17 | 54 |
| November 15, anchors................... | 1 | 80 |
| November 21, freight..................... | | 60 |
| December 17, freight.................... | 3 | 35 |
| December 11, freight..................... | 2 | 00 |
| December 16, freight.................... | 2 | 04 |
| December 20, labor..................... | 3 | 00 |
| 1896, January 13, two cast plates.............. | 1 | 40 |
| January 15, freight $40.80, cash $500, cartage $9.30........................... | 550 | 10 |
| February 6, one beam................... | 2 | 50 |
| February 6, two posts $13.56, pattern $15, cartage 25c, two sills $3.36............. | 32 | 17 |
| February 7, Bireline & Orr panel under stairs................................. | 32 | 00 |
| February 22, express 50c, repairing plastering $6.75............................. | 7 | 25 |
| February 29, express...................... | | 40 |
| February 29, damage to scaffolding due Lewis................................ | 10 | 00 |
| March 30, labor........................ | 32 | 75 |
| March 30, prismatic lights, defective...... | 106 | 50 |

1896, March 24, sky plate $2.20, door and frame
$3.50, cartage $5.70.....................$  11 40
March 24, claim of Lewis for repairing walls  15 00

Total amount of credits due Patterson & Co.
against Pullis Brothers.................$3,084 86

CREDITS DUE R. D. McDONALD AGAINST PULLIS BROTHERS.

Difference in value of the iron guards around bank
windows.................................$    5 40
Difference in value of guards around basement
windows................................    4 40
Grilles omitted from over front door............  25 00
Angle-iron omitted at sidewalk.................  25 00
Two coal-hole covers at $2.50 each..............   5 00
Boiler iron omitted from elevator pit............  24 80
Iron lookouts omitted.........................  47 00
Damage for delay............................ 1,500 00

Total amount of credits allowed R. D. McDonald
against Pullis Brothers......................$1,636 60
Total amount of credits allowed R. D. McDonald
and J. W. Patterson & Company as against
Pullis Brothers...........................$4,721 46

RECAPITULATION OF CLAIM OF PULLIS BROTHERS IRON
COMPANY.

Amount of original contract...................$4,750 00
Total amount of credits allowed against Pullis
Brothers................................. 4,721 46

Balance due Pullis Brothers Iron Company......$  28 54

He finds that the balance due Pullis Brothers Iron Company, for which they have established a lien is $28.54, and that they are entitled to a mechanic's lien on this building for that amount, together with interest on the same, at the rate of five per cent from May 16, 1896.

He further finds that the following credits claimed by R. D. McDonald against Pullis Brothers Iron Company have not been allowed:

McDonald v. Patterson & Co.

| | | |
|---|---:|---:|
| Damage for loose step..........................$ | 100 | 00 |
| Iron facia omitted............................ | 50 | 00 |

### Claim of John A. Lewis.

| | | |
|---|---:|---:|
| Amount of original contract, above grade.......$4,733 | | 00 |
| Amount of original contract below grade........ | 943 | 00 |

### Extras Allowed to Lewis.

| | | |
|---|---:|---:|
| For walling up cellar widow..................$ | 5 | 00 |
| Foundation for pilasters...................... | 12 | 00 |
| Building three pilasters...................... | 85 | 50 |
| Eight inch wall between kitchen and dining room | 10 | 00 |
| Work on basement bar room................... | 10 | 00 |
| Repairing flue and old wall................... | 17 | 00 |
| 1,000 paving brick used by Walton............ | 7 | 00 |
| Filling in and tamping six inches of basement... | 50 | 00 |
| Taking out and tamping six inches of basement. | 75 | 00 |
| Taking down old chimney and rebuilding same. | 7 | 70 |

| | | |
|---|---:|---:|
| Total amount contracts and extras.............$5,955 | | 20 |

### Cash Credits Against John A. Lewis.

| | | |
|---|---:|---:|
| 1895, June 1...............................$ | 150 | 00 |
| June 15............................... | 196 | 40 |
| June 28............................... | 372 | 00 |
| June 28............................... | 224 | 60 |
| Sept. 14............................... | 371 | 40 |
| Nov. 9............................... | 1,000 | 00 |
| Nov. 14............................... | 673 | 00 |
| Nov. 15............................... | 150 | 00 |
| Nov. 28............................... | 720 | 00 |

| | | |
|---|---:|---:|
| Total cash credits due Patterson & Co. against Lewis........................$3,857 | | 40 |

### Credits Due J. W. Patterson & Company Against John A. Lewis.

| | | |
|---|---:|---:|
| Underpinning press wall, omitted...............$ | 12 | 00 |
| Stone used by Lewis........................... | 8 | 00 |
| Lumber furnished to Lewis..................... | 40 | 00 |
| Mortar-board furnished....................... | 6 | 00 |

Lumber furnished to Lewis........................$ 11 65
Lumber furnished to Lewis........................ 57 50
Nails furnished to Lewis.......................... 2 50
Labor furnished to Lewis......................... 33 60
Cement........................................... 32 50
Labor furnished to Lewis......................... 18 00
Tile and cement, including claim of Abdill & Son 380 19
Lavatory concrete................................ 54 00
Laying tile floor in lavatory, omitted by Lewis... 26 40
One-half price on marble......................... 150 00

Total amount of above credits due Patterson &
    Company against Lewis.......................$822 34

CREDITS DUE R. D. McDONALD AGAINST JOHN A. LEWIS.

Roman and radius brick furnished by McDonald.. $500 00
Old rubble stone used by Lewis................. 75 00
Old joist used by Lewis........................ 6 00
Cleaning mortar off old roof................... 3 00
Taking down old gutter........................ 6 40
Repairing Lincoln Hall wall................... 4 25

Total amount of credits due R. D. McDonald
    against John A. Lewis....................... $594 65

RECAPITULATION OF CLAIM OF JOHN A. LEWIS.

Total amount of credit, contract and
    extras....................................      $5,955 20
Cash credits due Patterson & Co......$3,857 40
Other credits due Patterson & Co..... 822 34
Credits due R. D. McDonald......... 594 65

Total credits against John A. Lewis..    $5,274 39

Balance due Lewis on this building...    $680 81

He finds that there is a balance due John A. Lewis on
this building of $680.81, and that he is entitled to a
mechanic's lien upon this building for that amount, together
with interest on the same, at the rate of five per cent, from
May 16, 1896, to the date of the final decree in this case.

McDonald v. Patterson & Co.

### AMOUNTS DUE LEWIS FROM OTHER CONTRACTORS.

| | | |
|---|---|---|
| Amount due Lewis from Pullis Brothers....... | $10 | 00 |
| Amount due Lewis from Patterson & Company. | 30 | 00 |
| Amount due Lewis from Doyle & Company..... | 84 | 00 |
| Amount due Patterson & Company from Lewis for damage for failure to point flashing...... | 8 | 25 |

### CREDITS NOT ALLOWED AGAINST JOHN A. LEWIS.

| | | |
|---|---|---|
| Damage for failure to point flashing........... | $ 8 | 25 |
| Damage to concrete floors.................... | 150 | 00 |
| Damage for use of soft brick.................. | 1,000 | 00 |
| Damage for omission of coping................ | 10 | 00 |
| Damage for basement being too low........... | 100 | 00 |
| Damage for failure to point under windows.... | 75 | 00 |
| Damage for failure to plaster area walls........ | 25 | 00 |
| Total amount of contract and extras............ | $ 941 | 75 |

### CLAIM OF E. J. RYAN.

| | | |
|---|---|---|
| Amount of original contract.................... | $921 | 00 |
| Extra for grease trap......................... | 19 | 75 |
| Extra for changing wash-bowl................. | 7 | 00 |
| Total amount of contract and extras........... | $947 | 75 |

### CREDITS ALLOWED AGAINST E. J. RYAN IN FAVOR OF R. D. McDONALD.

| | | |
|---|---|---|
| For failure to cover water-pipes............... | $ 24 | 00 |
| For failure to bronze pipes................... | 1 | 50 |
| Omission of catch-basin...................... | 15 | 00 |
| Difference in value of sewer-pipe............. | 13 | 80 |
| Total credits allowed against Ryan and in favor of R. D. McDonald........................ | $ 54 | 30 |
| Balance due E. J. Ryan...................... | $893 | 45 |

He finds that there is a balance due E. J. Ryan on this building of $893.45 ; that he is entitled to a mechanic's lien upon this building for that amount, together with interest on the same, at five per cent, from May 16, 1896, to the date of the final decree in this case.

### CREDITS NOT ALLOWED AGAINST E. J. RYAN.

| | | |
|---|---:|---:|
| Damage claimed for cleaning sewer............. | $ 5 | 10 |
| Omission of water-closet in bank.............. | 23 | 00 |
| Omission of wash-bowl in bank................. | 8 | 00 |
| Omission of laundry tubs...................... | 83 | 00 |
| Difference in value of water-pipe.............. | 14 | 93 |
| Omission of air chambers...................... | .... | |
| Omission of traps under wash-bowls............ | .... | |
| Damage to water-closets and urinals........... | .... | |

### CLAIM OF CARSON & CO.

| | | |
|---|---:|---:|
| Amount of original contract................... | $1,252 | 00 |
| Extra for indirect radiation.................. | 60 | 50 |
| Total amount of contracts and extras.......... | $1,312 | 50 |

### CREDITS ALLOWED AGAINST CARSON & COMPANY IN FAVOR OF R. D. McDONALD.

| | | |
|---|---:|---:|
| Omission of boiler........................... | $300 | 00 |
| Additional radiation put in by McDonald...... | 75 | 00 |
| Damage for failure to bronze pipes..... ...... | 2 | 50 |
| Damage for failure to put in radiator boards.... | 14 | 00 |
| Total credits against Carson & Company in favor of R. D. McDonald........................ | $391 | 50 |
| Balance due Carson & Company.............. | $921 | 00 |

He finds that there is a balance due Carson & Company on this building of $921; that he is entitled to a mechanic's lien upon this building for that amount, together with interest on the same, at five per cent, from May 16, 1896, to the date of the final decree in this case.

### CREDITS NOT ALLOWED AGAINST CARSON & COMPANY.

| | | |
|---|---:|---:|
| Amount necessary to change vents............ | $ 15 | 00 |
| Amount necessary to repair risers............. | 5 | 00 |
| Damage for omission of sleeves................ | 100 | 00 |
| Damage for failure to cover steam-pipes........ | 10 | 00 |
| Amount necessary to repaint steam-valves...... | 25 | 00 |

### CLAIM OF J. WISEMAN & SON.

| | | |
|---|---:|---:|
| Amount of original contract.................. | $979 | 00 |

McDonald v. Patterson & Co.

CREDITS ALLOWED AGAINST J. WISEMAN & SON IN FAVOR OF R. D. McDONALD.

| | | |
|---|---|---|
| Florentine glass omitted..................... | $ 6 | 00 |
| Smoked glass put in........................ | 7 | 00 |
| Damage to putty.......................... | 35 | 00 |

| | | |
|---|---|---|
| Total credits allowed against J. Wiseman & Son in favor of R. D. McDonald.............. | $ 48 | 00 |

| | | |
|---|---|---|
| Balance due J. Wiseman & Son.............. | $949 | 00 |

He finds that there is a balance due Wiseman & Son on this building of $949, and they are entitled to a mechanic's lien upon this building for that amount, together with interest, on the same at 5 per cent from May 16, 1896, to the date of the final decree in this case.

AMOUNTS DUE J. WISEMAN & SON FROM OTHER CONTRACTORS.

| | | |
|---|---|---|
| From the Henry Taylor Lumber Company..... | $ 3 | 80 |
| From J. W. Patterson & Company............ | 13 | 68 |
| From James Van Sickle...................... | 23 | 34 |
| From John Doyle & Company .............. | 7 | 80 |

CREDITS NOT ALLOWED AGAINST J. WISEMAN & SON.

| | | |
|---|---|---|
| Repairing lavatory........................ | $ 7 | 50 |
| Defective painting in building............... | 400 | 00 |

CLAIM OF JOHN DOYLE & COMPANY.

| | | |
|---|---|---|
| Amount of original contract ................ | $1,850 | 00 |
| Extra plastering on partitions ............... | 100 | 00 |
| Extra plastering on cornice.................. | 15 | 00 |
| Extra tile furring ......................... | 154 | 00 |

| | | |
|---|---|---|
| Total amount of contract and extras........ | $2,119 | 00 |

CREDITS ALLOWED AGAINST JOHN DOYLE & COMPANY IN FAVOR OF R. D. McDONALD.

| | | |
|---|---|---|
| Damage on Acme wainscoting................ | $ 75 | 00 |
| Damage on plastering in bank office.......... | 100 | 00 |
| Total credits due R. D. McDonald ........... | 175 | 00 |

| | | |
|---|---|---|
| Balance due John Doyle & Company........ | $1,944 | 00 |

He finds that there is a balance due John. Doyle & Company, on this building, of $1,944, and that they are entitled to a mechanic's lien on this building for that amount, together with interest on the same at five per cent from May 16, 1896, to the date of final decree in this case.

### AMOUNT DUE JOHN DOYLE & COMPANY FROM J. W. PATTERSON & COMPANY.

| | | |
|---|---|---|
| One-half extra plastering on partitions ........ | $100 | 00 |
| Extra tile furnished for lavatory.............. | 27 | 60 |
| Total amount due Doyle & Company from Patterson & Company..................... | $127 | 60 |

### AMOUNTS DUE OTHER CONTRACTORS FROM JOHN DOYLE & COMPANY.

| | | |
|---|---|---|
| Amount due Wiseman & Son, cleaning windows, | $ 7 | 80 |
| Amount due Lewis for brick, water, labor, etc.. | 84 | 00 |
| Amount due Patterson & Company for plastering, patching, etc........................ | 47 | 00 |
| Amount due Patterson & Company for sand... | 7 | 90 |
| Amount due Gaynor & Company (no lien allowed) | 294 | 13 |

### CLAIM OF J. W. PATTERSON & COMPANY.

| | | |
|---|---|---|
| Amount of original contract ................$26,831 | | 00 |
| Extras of Patterson & Company allowed against McDonald, changing maple floor and door. | 58 | 00 |
| Sawing off old roof on Lincoln Hall........... | 2 | 00 |
| Grading hallway and putting in stone step..... | 58 | 00 |
| Moving old vault........................... | 4 | 50 |
| Furring wall in basement.................... | 3 | 30 |
| Extra work on lavatory..................... | 152 | 00 |
| Extra plastering on lavatory................. | 3 | 30 |
| Putting in wooden lookouts................. | 40 | 50 |
| Total extras of Patterson & Company allowed against McDonald ....................... | $266 | 60 |
| Total extras of Doyle & Company allowed against McDonald, as shown by the amount of Doyle & Company....................... | $269 | 00 |

McDonald v. Patterson & Co.

| | | |
|---|---:|---:|
| Total extras of John A. Lewis allowed against McDonald, as shown by the account of Lewis. | $279 | 20 |
| Total extras of Carson & Company allowed against McDonald, as shown by the account of Carson & Company...................... | 60 | 50 |
| Total amount of extras allowed E. J. Ryan against McDonald, as shown by the account of Ryan................................. | 26 | 75 |
| Total amount of extras allowed all contractors against R. D. McDonald................... | 902 | 05 |
| Amount of original contract.................. | 26,831 | 00 |
| Total amount of contract and extras..........$27,733 | | 05 |

CASH CREDTS DUE R. D. McDONALD AGAINST J. W. PATTERSON & COMPANY.

| | | |
|---|---:|---:|
| 1895, Sept. 11 ..............................$ 4,000 | | 00 |
| Nov. 9 ................ ................ | 1,000 | 00 |
| Nov. 14 ............................... | 1,000 | 00 |
| Nov. 15................................ | 1,600 | 00 |
| Dec. 28...... ........................ | 3,500 | 00 |
| 1896, Feb. 9, labor checks paid by McDonald... | 328 | 93 |
| March 14, labor checks paid by McDonald. | 541 | 35 |
| Cash paid Western Electric Company...... | 646 | 00 |
| Total cash paid by McDonald on this contract...$12,616 | | 28 |

OTHER CREDITS ALLOWED AGAINST J. W. PATTERSON & COMPANY IN FAVOR OF McDONALD.

| | | |
|---|---:|---:|
| Total damage on window..................... | $ .24 | 30 |
| Omission of window in basement.............. | 5 | 00 |
| Omission of woodwork around closet in bank... | 12 | 00 |
| Damage to pipe boxes....................... | 5 | 00 |
| Six hundred square feet of flag stone.......... | 60 | 00 |
| Omission of concrete roofing ................. | 57 | 08 |
| Abdill & Son, extra tile for lavatory .......... | 12 | 73 |
| Total credits allowed against J. W. Patterson & Company in favor of R. D. McDonald .... | $ 176 | 11 |

| | | |
|---|---:|---:|
| Total credit allowed against Henry Taylor Lumber Company in favor of R. D. McDonald... | $ 5 | 00 |
| Total credit against T. Wisman & Son......... | 48 | 00 |
| Total credit allowed against Pullis Brothers Iron Company................................ | 1,636 | 60 |
| Total credit allowed against John Doyle & Company................................... | 175 | 00 |
| Total credit allowed against John A. Lewis.... | 594 | 65 |
| Total credit allowed against Carson & Company.................................... | 491 | 50 |
| Total credit allowed against E. J. Ryan....... | 54 | 30 |
| Total credits allowed in favor of R. D. McDonald against contractors for omissions, damages, etc................................. | $3,081 | 16 |

### RECAPITULATION.

| | | |
|---|---:|---:|
| Amount of original contract and extras ........ | $27,733 | 05 |

### CREDITS.

| | | |
|---|---:|---:|
| Cash ........................................ | $12,616 | 28 |
| Damages, omissions, etc. ..................... | 3,081 | 16 |
| Total credits................................ | $15,697 | 44 |
| Balance due ................................ | $12,035 | 61 |

He finds that there is a balance due on this building to J. W. Patterson & Company of $12,035.61; that the said J. W. Patterson & Company are entitled to a mechanic's lien on this building for that amount, together with interest on the same, at five per cent, from May 16, 1896, to the date of final decree in this case.

He further finds that the $12,035.61, due Patterson & Company as a balance on this building, is distributed among the contractors and sub-contractors as follows, and that the amount set opposite each name is the amount of the lien which said contractors are entitled to under the findings of said master, together with interest on such amounts, at the rate of five per cent, from May 16, 1896, to the date of the final decree in this case:

| | | |
|---|---:|---:|
| Chesley Brothers, amount of lien............$ | 17 | 45 |
| Abdill & Son.................................. | 203 | 79 |
| Henry Taylor Lumber Co., amount of lien..... | 2,493 | 93 |
| J. Wiseman & Son............................ | 949 | 00 |
| Pullis Bros. Iron Co......................... | 28 | 54 |
| Doyle & Co.................................. | 1,944 | 00 |
| John A. Lewis.............................. | 680 | 81 |
| Carson & Co................................ | 921 | 00 |
| E. J. Ryan................................. | 893 | 45 |
| J. W. Patterson & Co....................... | 3,903 | 55 |

| | | |
|---|---:|---:|
| Total amount of liens......................$ | 12,035 | 61 |

He further reports that through his findings in this case, in the amount due Patterson & Company is included the sum of $32, the amount due Bireline & Orr, the same having been deducted from the claim of Pullis Brothers Iron Company.

He further reports that throughout his findings in this case he has merely given the balance due each claimant without estimating any amount due as interest; that below he has estimated the interest on each claim from May 16, 1896, to July 9, 1898; that the amount below at the right of each name gives the amount for which each claimant is entitled to a mechanic's lien upon this building, including interest on the same, estimated between the dates mentioned:

| | | |
|---|---:|---:|
| Chesley Brothers, amount of claim and interest.$ | 19 | 42 |
| Abdill & Son, amount of claim and interest.... | 225 | 67 |
| Henry Taylor Lumber Company, amount of claim and interest...................... | 2,761 | 68 |
| J. Wiseman & Son, amount of claim and interest.................................. | 1,050 | 89 |
| Pullis Brothers Iron Company, amount of claim and interest........................... | 31 | 60 |
| John Doyle & Company, amount of claim and interest................................. | 2,152 | 71 |
| John A. Lewis, amount of claim and interest... | 753 | 90 |
| Carson & Company, amount of claim and interest.................................... | 1,019 | 88 |
| E. J. Ryan, amount of claim and interest...... | 989 | 37 |

J. W. Patterson & Company, amount of claim
  and interest..............................$ 4,262 74

Total amount of liens and interest.............$13,259 56
  All of which is respectfully submitted.
                                    AUGUSTUS A. PARTLOW,
                                       Master in Chancery.

To these findings of the master, as to the law and facts,
and to his statement of the account between parties, excep-
tions, both special and general, were presented and argued
before the master by counsel for appellant, and by counsel
for most of the appellees; but all the exceptions were over-
ruled, and the master presented his said report, findings and
statement of account to the court. Counsel for appellant
and most of the appellees presented to the court their same
respective exceptions that had been overruled by the mas-
ter. The court sustained the exceptions of the appellant as
to two items as follows:

The court allowed appellant as against E. J. Ryan $7.50
on water-closets, and as against Patterson & Co. $54 on
sidewalk over lavatory, and ordered the master's report and
statement of account to be corrected by deducting $7.50
from the amount due E. J. Ryan and $54 from the amount
found due Patterson & Co., and the report and findings
were accordingly so corrected. The court then overruled all
other exceptions, and entered a final decree in accordance
with the corrected report and findings of the master; and
on evidence heard in open court the master was allowed
$300 for time spent in stating the account, etc., to be taxed
in his favor as costs; four-fifths of the costs were ordered
taxed to appellant, except the costs made by Gaynor and
Bireline & Orr. The other one-fifth of the costs were
ordered taxed to the other parties, in proportion to the
amounts of liens allowed each of them.

From which decree McDonald brings the case to this
court by appeal, and assigns upon the record the following
errors, to wit:

 "First. The Circuit Court erred in overruling the de-
fendant McDonald's exceptions to the findings, and to the

report of conclusions of law and fact of the master in chancery.

"Second. The Circuit Court erred in finding for the complainants and in entering a decree against the defendant, McDonald, in favor of the contractors, J. W. Patterson & Co., for the sum of $13,294.38, and ordering him to pay the same within twenty days from the 30th day of July, 1898.

"The Circuit Court erred in ordering that out of the proceeds of sale the following parties be paid the amounts set opposite their respective names, that is to say:

| | |
|---|---|
| Henry Taylor Lumber Company | $2,769 29 |
| Carson & Company | 1,022 68 |
| John Doyle & Company | 2,158 65 |
| J. Wiseman & Son | 1,053 77 |
| E. J. Ryan | 983 76 |
| John A. Lewis | 755 97 |
| Abdill & Son | 226 27 |
| Pullis Bros. Iron Co | 31 67 |
| Chesley Brothers | 19 46 |

"Fourth. The Circuit Court erred in adjudging and decreeing that defendant, McDonald, pay interest from the 16th day of May, 1896, to the date of final decree on accounts found due by the master to the contractors and sub-contractors.

"Fifth. The Circuit Court erred in considering incompetent testimony offered by the contractors and sub-contractors and in not sustaining objections thereto, and motions to exclude the same interposed by the defendant, McDonald.

"Sixth. The Circuit Court erred in not allowing the master in chancery, A. A. Partlow, three hundred dollars for stating an account in this cause, and in ordering that the same be taxed as costs.

"Seventh. The Circuit Court erred in not allowing the defendant, Robert McDonald, fifteen dollars per day as liquidated damages under the terms of the contract, from the 20th day of November, 1895, to, that is to say, the 6th day of May, 1896.

"Eighth. The Circuit Court erred in approving the final decree in this cause as the same appears of record and herein authenticated.

"Ninth. The Circuit Court erred in adjudging and ordering the defendant, Robert D. McDonald, to pay four-fifths of the costs in this case.

" Tenth. The Circuit Court erred in not adjudging and ordering the complainants to pay the costs in this case.

" Eleventh. The Circuit Court erred in not dismissing the bill of complaint in this cause at the costs of the complainants.

" Twelfth. The Circuit Court erred in finding and adjudging in favor of the principal complainants, being the contractors, when they, the contractors, failed to obtain from the architects the certificates required by the fourteenth paragraph of the contract, and failed to show a sufficient cause for not obtaining them."

And J. W. Patterson & Co., J. Wiseman & Son, and the Henry Taylor Lumber Co., appellees, have also by leave of this court assigned upon the record the following errors, to wit:

" (1) Said master and the court erred in not allowing to complainants, and each of them, the attorney's fees provided for in the statute, claimed in the bill, and shown and proven under evidence.

(2) The report, findings and statement of account of master and decree of court is erroneous, in that it allows to appellant thirty-five dollars damage as against J. Wiseman & Son for defects in the puttying.

(3) The master and court erred in allowing to appellant damages as against each of these complainants and each item thereof, as shown by the master's report.

(4) Said master and the court erred in refusing to allow these complainants, and each of them, the items in their respective claims for extra work and labor done and materials furnished in and about the erection of said building.

(5) Said report, findings, conclusions and statement of account of the master and the decree of court are erroneous in not allowing to J. W. Patterson & Co. the sum of $943, and allowing appellant credit with $4,000, when, as a matter of fact, only $3,057 was actually received.

(6) Said master erred in overruling complainant's objections and each of them to his report and conclusions, and statement of account.

(7) The court erred in overruling complainant's exceptions, and each of them.

(8) The court erred in not sustaining complainant's exceptions, and each of them."

MR. JUSTICE BURROUGHS delivered the opinion of the court. The report of the master in chancery to whom this cause

was referred by the Circuit Court, to take testimony and report conclusions of law and fact, and which is substantially set out in the statement preceding this opinion, gives some idea of the claims of the parties, and the facts in this case, as appears by the evidence in this voluminous record; and after a careful examination of the report and all the evidence, and the objections urged by appellant's counsel, and also those urged by counsel representing some of the appellees, we are satisfied, that while there are some inaccuracies in the decree, yet on the whole it does not contain prejudicial error as against the appellant, or the complaining appellees, except as to the allowance of $300 to the master as costs for his labor and time spent in stating the account between the parties, which is in excess of what the statute permits therefor; and to which we will refer hereafter.

We think that the changes made in the building during its construction, by agreement of the owner and contractors, justified all the extra allowances above the contract price that were made to the appellees by the decree; and that their failure to use the exact material specified in the contract in most, if not all the instances in which such was used, was justified from the many agreements made between the architects and the contractors; the contractors and the superintendent of appellant employed by him outside the terms of the contract; by appellant himself, or waived by him when he saw it used without objection; or were properly excused by reason of the extreme difficulty, if not impossibility, of the contractors getting just such material as the contract called for.

The evidence tends strongly to show that whenever material different from that called for by the contract was used is was good material and made good work. For much of this the decree rendered shows that the court made reasonable reductions, and to such an extent that, when everything is considered, no hardship appears to have been imposed upon the appellant.

There was some delay in the completion of the building

beyond the time named in the contract, for which the decree allows the appellant $1,500 as liquidated damages, under the provisions of the contract that $15 per day should be allowed as liquidated damages.

The appellant insists that the amount allowed is inadequate, but from all the facts and circumstances shown by the evidence, it does seem to us that it is reasonable and fair, because, whether we treat the $15 per day as a penalty or as liquidated damages under the contract, the $1,500 allowed seems to us, in equity and good conscience, to be a just and fair amount for the contractors to pay.

The allowance of interest to the principal contractors for the time given in the decree was proper under our statute, which allows interest on money due upon a contract in writing; and as the contract (in writing) between the appellant and the principal contractors inures to the benefit of the sub-contractors, it was proper to allow them interest also.

Masters in chancery in this State, by Section 9, Chapter 90, entitled " Master in Chancery," are entitled to " receive for their services such compensation as shall be allowed by law, to be taxed as costs." (Starr & Curtis' Ill. Statutes (1896), Vol. 2, p. 2694.)

And by Section 20 of Chapter 53, entitled " Fees and Salaries," they are allowed " for taking and reporting testimony, under order of court, the same fee as for taking depositions " (fixed at 15 cents per 100 words); " for examining questions of law and fact in issue by the pleadings, and reporting conclusions, whenever specially ordered by the court, a sum not exceeding ten dollars ($10); and no other fee or allowance whatever (except those in this act specified) shall be made for services by masters in chancery."

" In counties of the third class, masters in chancery may receive for examining questions in issue referred to them, and reporting conclusions thereon, such compensation as the court may deem just, and for services not enumerated above in this section, and which have been and may be imposed by statute or special order, they may receive such fee as the court may allow." (Starr & Curtis' Ill. Statutes (1896), p. 1915.)

. From which it appears that it is only in counties of the third class that masters in chancery are entitled to more than ten dollars for reporting their conclusions whenever specially ordered by the court, and no more.

Vermilion county not being a county of the third class, but only of the second class (Section 13, Chapter 53, Starr & Curtis' Ill. Statutes (1896), p. 1903), the Circuit Court committed reversible error when it allowed the master in this case $300 as costs for stating the account, when the statute only permits him to be allowed $10 therefor. (See Lee, Adm'r, etc., v. Rowley et al., 4 Ill. App. 218, and Harvey et al. v. Harvey, etc., 87 Ill. 54.)

For the error above indicated, we reverse that part of the decree allowing $300 to the master in chancery for stating the account, and reduce his allowance therefor to $10. In all other respects the decree is affirmed.

. Reversed in part and affirmed in part.