CITY OF ELGIN

v.

MELISSA WELCH.

1. INJURY FROM WATER—DUE TO VARIOUS CAUSES—PROVINCE OF JURY.—Where a city is liable for certain damages from the water set back by a sidewalk, but is not liable for damages done by drainage in its natural course from other quarters, or by percolation, and the former damage can not be ascertained with certainty, it is the province of the jury to estimate, as best they can from the evidence, how much of the whole amount was occasioned from the sidewalk, but it is not proper to include any portion of that amount that was due to the other causes whether operating independently of or in conjunction with it.

2. BURDEN OF PROOF.—When the nature of the case admits of it the burden of distinguishing by proof the amount due to the cause alleged, and for which the defendant is responsible, from that due to other causes, is upon the plaintiff.

ERROR to the Circuit Court of Kane county; the Hon. C. W. UPTON, Judge, presiding. Opinion filed May 23, 1885.

Mr. R. S. EGAN and Mr. J. W. RANSTEAD, for plaintiff in error; as to the non-liability of the city if the acts were done before plaintiff's purchase, cited Laney v. Jasper, 39 Ill. 46; I. C. R. R. Co. v. Allen, 39 Ill. 205; T. W. & W. R. R. Co. v. Hunter, 50 Ill. 325; Cooper v. Randall, 59 Ill. 321; C. & A. R. R. Co. v. Maher, 91 Ill. 312; Decatur Gas Light Co. v. Howell, 92 Ill. 19; C. & E. I. R R. Co. v. Loeb, Chicago Legal News, April 5, 1884; Adams v. Hastings, etc., 20 Minn. 59; Fowle v. N. H. & N. R. R. Co., 112 Mass. 334; Troy v. Cheshire R. R. Co., 3 Foster (N. H.), 83; Powers v. City of Council Bluffs, 45 Ia. 652; Kansas R. R. Co. v. Mihlman, 17 Kans. 224; Elizabeth R. R. Co. v. Combs, 10 Bush (Ky.), 382.

Mr. R. N. BOTSFORD, for defendant in error; that if an injury is caused by the imperfect construction of an embankment or hazardous experiments or negligence in maintaining

it, an action lies, cited Cahill v. Eastman, 18 Minn. 324; Porter v. Pequonnoc M'f'g Co., 17 Conn. 249; Gray v. Harris, 107 Mass. 492.

As to instructions: W. St. L. & P. Ry. Co. v. Rector, 104 Ill. 296; Chicago P'k'g Co. v. Tilton, 87 Ill. 547; C. I. F. Co. v. Bradley, 10 Bradwell, 328.

PLEASANTS, P. J. This was an action on the case brought by the defendant in error to recover damages for the flooding of her premises in the city, alleged to have been caused by improper grading of Gifford street, and construction of sewers, ditches, embankments and sidewalks thereon. She obtained a verdict for $400, but remitted $150, whereupon the court overruled defendant's motion for a new trial and entered judgment for plaintiff for $250.

Gifford street, running north and south, is crossed at right angles, in order from the north, by North, Division and Chicago. Plaintiff's premises front five rods on it, and seven and one tenth on Division, being on the southwest corner of those streets.

In 1848 Jonathan Force bought a tract of one and a quarter acres, including the premises, and lived on it until 1865. In 1870 he sold the lot in question to Elnathan Welch, who built the house on it, and in 1878 sold to his brother, the husband of plaintiff, and he conveyed to her on the 8th of November, 1881.

It was lower than any of the land immediately about it, forming the natural basin for the drainage from three or four acres. For some years after the streets were laid out a considerable quantity of surface water used to come from the northeast to Division street, and flow west on its north side, and then northwest across the corner of the lot diagonally opposite plaintiff's, to Gifford, then north on the east side of Gifford a distance of six or eight rods, to the foot of a hill, where it crossed the street under a sluice-way, to the block on the west known as the Borden lot, and then generally sank away, evaporated, or passed on northwest. About the year 1854 this sluice-way was buried up by the grading down of the hill,

and then the water would back up south over Gifford and Division streets, upon the plaintiff's lots. These streets were afterward graded up at and about their crossing, which caused the water again to flow, when high enough, along its old course over Gifford to the Borden lot. The owner of that lot, for its protection, threw up a sidewalk along its east line; and this being washed out, he then, by permission of the city authorities, rebuilt it of gravel, and put on six or eight inches more of concrete, which raised it above the street at that point, and so again set the water in time of freshet back upon the plaintiff.

This rebuilding was done in the spring of 1882, after she became the owner of the premises in question. But meanwhile, and before she purchased, the other two lots about them had been more or less raised. Plaintiff's also had been filled up on the front by her husband when he owned it, which protected it to some extent until Division street was raised and the sidewalk east of the Borden lot made higher. In raising Gifford and Division streets ditches were left on the side next to and in front of her lot—the whole length of it on Gifford, and about half on Division; and all the work on Gifford, which only is complained of in the declaration, except the rebuilding of said sidewalk along the Borden block, was completed in September, 1881, two months before she made her purchase.

This work was, in our opinion, of a character so fixed and permanent, that for any damage thereby caused to plaintiff's lot, at any time, independently of what was done or permitted by the city on that street after her purchase, it would not be liable to her. The right of action for such damage was in the party who owned the lot when the work was done, and did not pass to his grantee. Chicago and Alton R. R. v. Maher, 91 Ill. 312; Decatur Gas Light and Coke Co. v. Howell, 92 Id. 19, 20; I. C. R. R. Co. v. Allen, 39 Id. 205; Laney v. Jasper, Ibid. p. 53; T. W. & W. R. R. Co. v. Hunter, 50 Id. 325; Chicago & Eastern R. R. Co. v. Loeb (opinion filed at Ottawa, March 26, 1884).

It is said, however, that no such damage was claimed,

shown or recovered; that the rebuilding and raising of the
sidewalk along the east line of the Borden lot is the *gravamen*
of the complaint and all the damage shown the direct and
proximate effect of that structure.

We think there is evidence in the record tending to show
that some was caused by surface water from the lands south
and west of plaintiff's lot, and some by percolation from
the ditches, of water that was not backed up into them by the
concrete sidewalk. ·

Jonathan Force says: " The Welch lot was the natural sink
for about three acres of land, and is now." Frank Preston
says: " I purchased one of the Force lots just south of Welch's;
put in 300 or 400 loads of gravel. * * * A large part of
the water which comes down to Division street comes from up
my way." E. H. Welch, the husband of plaintiff, says: "Gif-
ford street was graded in 1881. This was just before the
property was deeded to my wife. It was in September, 1881.
I told Martin, the street commissioner, when he did the work,
that any one could see with the naked eye that he was leaving
a soakage there, and that he might just as well fix a ditch
from it into the premises for it would soak right through into
my cellar. When the water came into the excavation in
front of my premises it would soak through into my basement
and keep us busy dipping it out." This was before the con-
crete walk was built or contemplated. Again he says: " When
the concrete walk was raised it was made six or eight inches
higher than before. Before that was raised we had a little
water come in the lot, but not much; it was worse after that."
And the plaintiff herself, speaking of the flooding of July,
1882, and which she says was the first trouble she had with
water on her premises, testifies: " It rained hard, very hard, in
the afternoon. * * * The surface water came from north
of Gifford street, down Division street, and some from Chi-
cago street." Chicago street is the east and west street next
south of her lot. Again she says: " It never troubled us un-
til they left that ditch in front of our house. That would
stand full of water which soaked into the basement."

The foregoing is all taken from the evidence introduced on

the part of the plaintiff. It appears by all the witnesses on both sides, so far as they have known it, that from the first through all the changes made in the surrounding lots and in the streets and sidewalks, it has been subject to flooding about as since plaintiff owned it. Force abandoned the attempt to cultivate it for that reason. Her husband says: "I bought the lot in 1878 from my brother Elnathan. There was a house on it then, built by my brother. He had filled in around the walls to turn the water off. After I bought it I graded and filled in until I got discouraged. I found there was so much water coming in that there was no use to try and protect the house."

The flooding proved occurred in the spring of 1882 (but the witness, E. H. Welch, does not state whether this was before or after the concrete sidewalk was raised), in June and July next following, and in February, 1883—all upon occasions of heavy rains, and the last, which was an extraordinary freshet, aggravated by the sudden melting of a large body of snow. Each of them furnished water enough to do some damage by drainage in its natural course and by percolation from the street ditches, without or in addition to that which was backed up by the concrete sidewalk along the Borden lot.

Upon such evidence the defendant asked the court to give to the jury among others the following instructions:

3. If you believe from the evidence that from a state of nature the plaintiff's lot was a basin which caught the drainage of surface water from the land surrounding it, and that she has sustained damage from such surface water which naturally flowed thereon, then she can not recover in the action for any such damages, and you should so find.

4. You are instructed that one purchasing land or a city lot takes it subject to all its drawbacks which exist at the time of such purchase. And in this case, even though you should believe from the evidence that by grading its streets and neglecting to make suitable culverts to provide for the escape of surface water, the defendant has caused an unnatural quantity of surface water to flow onto the plaintiff's premises, and that

she has been damaged thereby, still, if you also believe from the evidence that such acts by the city were done before the plaintiff purchased her lot, then she can not recover in this action for such damages, and you should so find.

The first of these was modified by inserting after the words " which naturally flowed thereon," the words " and from that alone," and the other was refused; while in the second instruction given for the plaintiff the jury were told that, " if the flooding complained of was in consequence of the surface water on said street overflowing in setting back upon the street for want of proper sluice ways across said street and under the sidewalk to permit the escape of said water, or because of depressions or excavations made and left in the said street in front of plaintiff's premises, then the defendant can not shield itself from liability simply because said premises, or any portion thereof, is or was below the grade of said street."

If from the nature of the case the jury could not ascertain with certainty the amount of plaintiff's damages from the water set back by the concrete sidewalk, in contradistinction from that done by drainage in its natural course from other quarters or by percolation from the ditches of water other than that so set back, it was their province to estimate as best they could from the evidence how much of the whole amount was occasioned by it; but it was not proper to include any portion of that amount that was due to the other causes, whether operating independently of or in conjunction with it. C. & N. W. Ry. Co. v. Hoag, 90 Ill. 346; Ogden v. Lucas, 48 Id. 493; and when the nature of the case admits of it the burden of distinguishing by proof the amount due to the cause alleged, and for which the defendant is responsible, from that due to other causes, is upon the plaintiff. Priest v. Nicholds, 116 Mass. 406. We are therefore of opinion that it was error to modify the third instruction and refuse the fourth, as asked by the defendant, and that the latter alternative in the second given for the plaintiff was misleading if not positively erroneous. The fourth for plaintiff is based upon the hypothesis that the city allowed or caused depressions or excavations to be made in the street opposite her premises " while she was the

owner thereof," of which there was no evidence. It was therefore improper to give it.

For these errors the judgment will be reversed and the cause remanded.

Reversed and remanded.