The Edward Edinger Company v. J. E. Willis et al., Consolidated with Columbia Casualty Company, Appellant, v. The First Baptist Church of Decatur, Illinois, Appellee.

Gen. No. 8,427.

109

HORACE W. McDAVID and R. J. MONROE, for appellant.

F. R. WILEY and DECK, JACK & BOGGESS, for appellee; JESSE L. DECK, of counsel.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This appeal is brought to review a decree of the circuit court of Macon county in two cases brought to foreclose mechanics' liens on the property of The First Baptist Church, a corporation, of Decatur, which arose out of a contract to build a new church for that corporation, one Ernest Widmer being the general contractor.

The first case designated in the records was instituted by Edward Edinger Company as a corporation by bill filed September 11, 1925, to foreclose a lien for cut stone furnished as subcontractor, naming as parties defendant J. E. Willis et al., trustees of The First Baptist Church, Margaret Widmer, administratrix of the estate of Ernest Widmer, deceased (the contractor), and Columbia Casualty Company, a corporation (the surety), but the summons was served only upon the trustees. On February 8, 1926, The First Baptist Church of Decatur, a corporation, was

made defendant, entered its appearance and filed answer. The suit was dismissed as to Columbia Casualty Company without service of summons or notice. The trustees also filed their answer to the amended bill. Both answers are substantially alike and admit the making of the contract between the church corporation and Ernest Widmer in his lifetime for construction of a new church building in Decatur; that he died on July 24, 1925, without completing the job, and that the Columbia Casualty Company, his surety, entered upon the completion of the contract; denies any right to lien of the complainant Edinger, and further alleges that no notice of lien was given to the owner within 60 days after final delivery of any materials by complainant Edinger, and further denies that any foreclosure proceeding was instituted by Edinger Company against said First Baptist Church within four months thereafter. Subsequently thereto it developed that Edward Edinger Company was a partnership and by leave of the court the copartners were substituted as complainants in lieu of the corporation.

While this suit was still pending and undetermined, the general contract was completed by the Columbia Casualty Company, and being unable to arrive at a settlement with the owner, the Columbia Casualty Company, appellant, filed its bill of foreclosure in the circuit court of Macon county, the proceedings being instituted on April 30, 1926.

The bill sets forth that on July 30, 1924, the defendant, The First Baptist Church of Decatur, Illinois, a corporation, was the owner of lots one and two in block eight of Western Addition to the City of Decatur, and that on that date it entered into a contract in writing with one Ernest Widmer for the construction of a church building, copy of the contract and specifications being attached to the bill of complaint. The bill further sets forth the death of Widmer during the

construction and before completion; that the complainant surety company entered upon the construction of the work and completed same, and that the building was tendered to the owner on March 11, 1926, and was accepted on March 13, 1926. The bill further alleged that payment became due by the terms of the contract on April 12, 1926, but that payment was refused. It appeared by the construction contract made a part of the bill of complaint that the time of completion was originally fixed as of July 1, 1925, but the bill alleged that an extension of time had been given, extending the time to September 1, 1925.

By amendment to the bill of complaint it was further alleged that the owner did not give possession of the premises on or before September 1, 1924, as the contract between the defendant and The First Baptist Church, and the said Ernest Widmer required, but on the contrary did not give possession thereof until some time during the month of November, 1924.

A written contract was entered into between appellee and Widmer, doing business as the Widmer Construction Company, on July 30, 1924, in and by which contract Widmer agreed, for the sum of $144,000, to erect for appellee a church building according to the plans and specifications of the architect. All of the rights and liabilities of the parties arise out of this contract, which is the basis of this case.

Among the other provisions this contract provides:

Art. I. That Widmer was to furnish the material and build the building according to the specifications of the architect. He was also to receive a commission of two per cent for supervising the removal of the brick building already on the lot to the rear of the lot. (This building was incorporated into the new building, as a part thereof.)

Art. III. Which reserved to the appellee the right to make alterations in the plans and specifications;

but such changes could only be made upon the written order of the architect.

Art. V. Provided that if the contractor did not show proper diligence in prosecuting the work the appellee could furnish labor and materials upon giving the contractor five days' notice in writing (this at the expense of the contractor). If the architect certified the neglect of the contractor this was sufficient grounds therefor, and the appellee could take over the work and complete it at the cost of the contractor; and the architect's certificate should be final as to such costs.

Art. VI. Provided for the completion of the building by July 1, 1925, provided the contractor got possession of the premises by September 1, 1924. This article also provides for a forfeit of $50 per day for every day the building remained uncompleted after that date or the date to which extended, by the architect, as liquidated damages.

Art. VII. Provided that should the work be delayed by any act or failure of the appellee or the architect to do anything, the time for the completion of the building should be extended for a period equivalent to the time lost by reason of the conduct of appellee or the architect. Provided, that no allowance could thus be made for such extension of time unless a written claim was made to the architect asking for an extension, within 24 hours after the occurrence of such delay.

Art. IX. Provided that any controversy arising between the contractor and the appellee should be settled by the architect, whose decision should be final (except certain matters might be arbitrated); but no request for arbitration was ever asked by either party under this clause and, therefore, it is not in question.

Art. X. Provided that while $144,000 was the contract price, the list of changes attached to the contract formed a part of it, and that the appellee might accept

any or all of such changes at any time before the work was actually started on them; and provided the amount set opposite each change should be deducted from the contract price.

This article also provided the manner of making payments by appellee as follows: "that such sum shall be paid in current funds by the owner to the contractor in instalments, upon written certificates of the architect that payments have become due. Each certificate shall represent 85 per cent of the architect's estimate of the value of the labor incorporated in the building and material delivered on the site since the preceding certificate was issued. The 15 per cent reserved shall be payable when the final certificate is issued. Said payments on instalments shall be made on the 10th day of each month for the work and material for the building for the preceding month. The final payment shall be made within 30 days after this contract is fulfilled."

Art. XI. That no certificate except the final one shall be conclusive evidence of the performance of the contract.

After the execution of this contract, appellant executed Widmer's bond, as surety, for the faithful performance of the work on his part.

In accordance with Art. X, and the list thereto appended, appellee elected to make certain changes in the specifications. For example, where terra cotta was provided in the contract, appellee made the change to plaster; and also elected to make other minor changes. This was done on February 25, 1925, and before any work had been started on such portion of the contract. Also, on August 29, 1924, the appellee asked other changes according to the list attached to Art. X.

After the execution of the contract Widmer began work on the building on September 10, 1924. He con-

tinued to carry out the construction work from that time up until the date of his death, July 24, 1925. After his death, the appellant began, on August 19, 1925, the work of completing the building, its representative in this matter being one Neubauer.

The bill alleged that during July, August, September, October, November and December of 1925, the defendant was in default under its contract in that it failed to furnish the complainant for installation a large portion of the art glass windows and finish hardware; also that the owner failed to select its color scheme for the painters within a reasonable time after color charts had been submitted to the owner for approval, and that by reason thereof and numerous other changes and delays occasioned by the act or fault of the owner, it was impossible to complete the work on the building until on or about March 11, 1926; by reason whereof the complainant was forced to lay out $2,500 in extra pay rolls and insurance; that claims for extra painting in the auditorium and lobby where terra cotta was eliminated and plaster substituted; claims for extras for leaded glass in the doors and pastor's study and for painting of interior iron work and for glass furnished in auditorium doors and transoms, had been presented to the architect and wrongfully refused.

That claims on account of delays of or chargeable to the owner or on account of other contractors had been presented, and the architect refused to issue certificates therefor; that the architect was not and is not a fair and impartial person to pass upon the claims for extras or damages accruing to complainant by reason of delays of or chargeable to the owner, and that complainant cannot have a fair and impartial judgment from said architect on such items by reason of the prejudice and partiality of the architect.

The bill further alleged that no final certificate was furnished complainant on completion of the work, nor

within 30 days thereafter, nor has any final certificate been made, but the architect has failed and refused to deliver the same, although on to wit, April 20, 1926, a demand was made of the owner for final payment and final payment was refused unless complainant would agree to forfeit $50 per day as liquidated damages on and after September 1, 1925, but no objection was made by the owner that a final certificate had not been obtained from the architect and production of such certificate was therefore waived; that defendant offered a settlement but made no objection to failure of appellant to produce an architect's final certificate, and none was requested from complainant.

The bill named as defendants The First Baptist Church, a corporation, and George Troy, the painting contractor. The church was served with summons on April 30, 1926. Troy was not served, but later released any claim of lien.

To the bill as amended The First Baptist Church filed its answer, in which it admits the completion of the building on March 11, 1926, and that it was accepted March 13, 1926; admits that Troy claimed a lien, but denies that it failed to give possession of the premises to the contractor on or before September 1, 1924, as required by the contractor. The answer further denies that in July, August, September, October, November and December of 1925, it was in default under its contract, and further denies that it delayed the complainant in any way in the completion of the building; further denies that the architect wrongfully refused to issue a certificate for the extra work claimed in the bill; further denies that the architect was unfair and partial; denies that the amount claimed by complainant is due and states that there is due the complainant the sum of $776.38 only; further denies that any architect's certificate was ever demanded and alleges that its production was not waived by

the owner, and pleads recoupment of damages for delay in the construction according to the contract to the amount of $9,000; admits liability to the amount of $776.38 and denies liability for any other sums whatsoever.

Replications to this answer were filed by Columbia Casualty Company and on its motion the two causes were consolidated and referred to the master for hearing. In substance the master's report found in favor of complainant, Columbia Casualty Company, as to all but two of its claims for extras, namely, the item claimed of $327.50 for painting of plaster in the auditorium and lobby where terra cotta was eliminated, and the item of $2,202.67 for damages on account of the delay of the owner. He also found that the defendant was entitled to the deduction of $46 for a lobby grille allowed by the architect, and allowed claimed damages to February 19, 1926, amounting to $7,400. The architect in his report allowed $8,350 damages for delay in construction, which he had deducted from the amount remaining due. The architect had also deducted the amount of claim of Edward Edinger Company, but the latter claim was disallowed by the master and held not to be a lien. The master found the total sum due complainant to be $3,507.06, but refused to allow any interest thereon. His report was filed April 19, 1929, three years after the completion of the contract.

Upon hearing before the court the exceptions to the master's report were overruled, and decree was entered sustaining the master's report and ordering the bill of Edinger Company dismissed for want of equity and ordering that complainant have foreclosure of its lien upon The First Baptist Church to the amount of $3,507.06.

The appellant, Columbia Casualty Company, has brought the record, by appeal, to this court for review.

The principal item of contention in this record is the allowance of liquidated damages to appellee in the sum of $7,400 for the delay of 148 days in the completion of the work, at the rate of $50 a day, in accordance with the terms of the contract.

It is contended by appellant and supported by the proofs that the delay of the house moving contractor seriously interfered with the work to be done by Widmer under his contract, and the architect called Mrs. David's attention to that fact and reminded her that when the building contract was let, it was expected that the house be moved in 15 days. A letter was produced in which the building committee stated that because of the delay of the house mover the time was extended for 60 days. Because of this delay Widmer was not permitted to commence work on the basement until the month of November, 1924, and the basement was not completed at the time of the storm in December, and the contractor laid off men until January 10 following. The time of completion specified in the contract was upon the provision that the owner gave possession of the ground on or before September 1, 1924.

According to the witness Fisher, a licensed structural engineer and general contractor of broad experience, the extension of 60 days allowed by the owner was wholly disproportionate to the time actually lost by reason of delay of the house mover. It should have been about four months. For this delay and default the architect refused to allow Widmer any extra time. The trustees of the church, however, relented and allowed him 60 days' extension, but during a time when Widmer's men could not work by reason of the wintry and stormy weather.

Art glass was reserved by the owner to be let to another contractor. On July 8, 1925, approximately two weeks before Widmer's death, appellee, The First

Baptist Church, entered into contract with Jacoby Art Glass Company of St. Louis, Missouri, for that company to furnish and install the art glass, in which contract it was specified that that contractor have 60 days after receipt of patterns and sizes for doing its work, and the window sash to be furnished and delivered to Jacoby Art Glass Company. This provision was contrary to the general specifications in the Widmer contract. On July 20, 1925, Widmer wrote a letter to the architect claiming a delay at that time of two weeks on account of art glass and requesting an extension of time. This request was refused. On July 18, 1925, July 31, 1925, and August 4, 1925, Jacoby Art Glass Company was writing letters to the architect Clausen, endeavoring to get blue prints and sizes for the art glass to be made by them. On August 1, 1925, Clausen mailed blue print of one light and promised a set of plans the following week. On August 25, 1925, the list and glass sizes were returned to the architect for further information, and again the Art Glass Company requested that the sash be sent to St. Louis.

Jacoby Art Glass Company finally sent a man to Decatur to get full information. He reached Decatur on August 25, 1925, and visited the site of the work and obtained additional information necessary to complete the contract. This would make the 60 days allowed for delivery of art glass expire October 25, 1925. During the latter part of August and the first part of September, appellant's carpenters were busily engaged installing the window sash in the church as specified in the contract, and after the art glass company wanted the sash sent to St. Louis, as shown by correspondence mentioned, appellant was directed to remove the sash and ship the same to St. Louis, which was done, and the carpenters then had nothing to do; so that on September 12, 1925, Clausen gave an order for extra work in the old house and the men were used

there until the bulk of the art glass sash came back in October. The carpenters were called back on the job when the art glass sash was received from St. Louis, the first shipment being made on October 3, 1925, another one on October 22, 1925, another October 27, 1925, another December 7, 1925, and another December 24, 1925. The first shipment was received on October 5 and the carpenters were recalled on October 7. The carpenters were through installing such sash as had been delivered on October 30, and were laid off then until after Christmas for lack of heat. These sash were put in as rapidly as possible and the greater part of them were finally installed on October 30, 1925. There were some windows left with no glass in, and these were boarded up. Other glass was ordered changed by the owner on November 5, 1925. Other art glass was delivered from time to time, some of it not being shipped until in January, 1926.

By section 80 of the contract it is provided that finish hardware would be furnished by the owner and installed by the contractor. On June 29, 1925, the witness Brinkoetter for Morehouse and Wells Company, hardware dealers, made up a hardware list, which was submitted to the building committee of The First Baptist Church, and an order for the same was finally placed on July 22, 1925. Part of this was special hardware which would normally require from 10 to 14 weeks to get. Delivery began some time in September, 1925, and continued along until the late winter. In July, 1925, Widmer, by letter to the architect, requested an extension of time on account of delay in furnishing hardware, and this request was refused.

When the hardware came it was learned that not all of the items were in the shipment. The Norton door brackets did not come until February 26, 1926. Some were ordered extra. The Lemco Adjusters were wrong and were not replaced until some time in February.

Clausen testified that the hardware list and order were made up by Widmer or his superintendent. This was denied by the hardware clerk who compiled the list and Clausen later retracted his statement.

Extra hardware was ordered from time to time beginning on January 19 and extending to March 10, 1926. The last order on March 10 was for 37 casement adjusters, which were not ordered or delivered until after the inspection by the committee on March 5. According to Clausen, it takes a carpenter an hour to put one on. They were put on as soon as received. The escutcheons were not in the large shipment and did not come until January, 1926. The Norton door checks, of which the appellee, The First Baptist Church, purchased an additional 14 on January 19, 1926, each required one man one-half day to install. Neubauer was waiting on hardware and called at the hardware office nearly every day.

On October 25, 1925, demand was made of the heating contractor for heat by October 31. The heating contractor refused to make temporary heating connections unless he was paid extra for temporary settings. On October 26, 1925, the architect replied to the heating contractor, again requesting connections for heat, but not giving any order for temporary connection. On December 10, 1925, The First Baptist Church gave an order for heating connections and agreed to hold the heating contractor harmless for the use of the plant. This was accepted on December 12, 1925, and the heating plant turned over to appellant for use at that time.

It was conceded by all parties that it was the duty of the owner to furnish heat. Appellee does not controvert these claims, but seeks to hold Widmer and appellant to the very letter of the contract as set out in Article VII, in spite of the fact that Widmer asked for an extension of time for delays on account of non-

delivery of hardware and art glass four days before he took his own life, all of which requests were refused by Clausen, the architect. The master and court below did not follow the language of the contract in determining the rights between these parties, nevertheless the court below held that the record did not show that the architect was guilty of any actual fraud. It is not necessary that appellant establish actual fraud, as understood by appellee in other classes of cases.

Arbitrary nonaction is in law equivalent to a decision or exercise of judgment against a party without any ground or warrant of fact therefor, and is a fraud in fact and in law. *Blome v. Wahl-Henius Institute,* 150 Ill. App. 164, 171. If the architect, without the existence of any reason or excuse whatever, or warrant of fact therefor, arbitrarily decided against the appellant upon questions in dispute, then such action was in law a fraud. *Blome v. Wahl-Henius Institute, supra.*

Appellee has cited a number of cases laying down the measure and extent of proof required to show actual fraud. All of the cases cited relate to bills to set aside deeds, cancel contracts, bills of sale, or are bills in the nature of creditors' bills, and all charge actual fraud.

Actual fraud, that is, fraud in which a dishonest motive prevails, as distinguished from constructive fraud, is not the only grounds of impeachment of an architect's certificate. Proof of constructive fraud or gross mistake of such a character as to amount to a palpable and substantial wrong is sufficient. None of the cases cited by appellee apply to or throw any light upon the question of impeachment of an architect's certificate in cases of this kind.

This record is replete with testimony showing arbitrary conduct amounting to constructive fraud on the part of the architect. During the months of

January and February, 1926, nearly all of the work performed was upon extras and changes ordered by appellee. We call attention to the baptistry, which was to be constructed with a concrete core wall, plastered on the outside and lined with ceramic tile. The concrete core wall had been installed and was dried out and the outside plastered, and they were ready to put on the lining of tile on December 28, 1925. The tile pattern was then laid out on the pulpit platform. The owner, through the building committee, stopped the work and ordered another contractor, Dennis & Son, to cut out the front of the baptistry and put in a glass front down 18 inches. This required cutting and re-water proofing. Appellant was unable to retain the ceramic tile setter which it had obtained for the work and when Dennis & Son turned the work back some time in January, 1926, for appellant to proceed, difficulty was had in obtaining a competent tile setter. A number of different workmen were tried and discharged, so that the work was not completed until March 3, 1926. Yet the owner now is in the position of claiming that it is entitled to $50 a day as damages during all that time that it had glass setters, water proofers and tile setters working on the baptistry in the auditorium. This is in keeping with the correspondence that passed between Widmer and the architect in July, 1925, as follows:

"July 20, 1925

"S. A. Clausen, Architect.

This letter will notify you in accordance with the terms of our contract that we have been delayed in our work on the First Baptist Church for two weeks on account of art glass and hardware and are now asking for extension of time on account of same.

(Signed) E. Widmer Construction Company."

"E. Widmer Construction Company.

Re your letter 20th asking for extension of time.

Be advised that the building in its present state with plastering only fairly begun, walls full of dampness and no trim delivered, any request for extension of time due to the fact that there has been no finish hardware delivered by the owner is ridiculous and cannot be granted. Allow me to call your attention to the fact that the owners will be damaged $50 per day after September 1st until completion.

(Signed) S. A. Clausen."

On July 24, 1925, Widmer committed suicide.

Neubauer testified that in the presence of Marsh, Wiley and the attorney Clausen, the architect, said that "inasmuch as he had been insulted by Mr. Widmer and at times by Mr. Hess, he believed in making the Columbia Casualty Company pay every penny he possibly could." The minister, Marsh, as to this conversation, stated that Mr. Monroe and Mr. Wiley were present. "I do not recall Mr. Clausen's exact words. He said that there had been so much delay, and he had had so much difficulty that so far as he was concerned he didn't care if the contractor had to fill the contract to the letter."

Clausen's reply to this testimony was: "I don't remember the exact words but what I said was to the effect that they had tried to get out of their contract so many times that I believed in settling on the basis of the contract. I was not angry." Neither Mr. Monroe nor Mr. Wiley testified.

It is nowhere pointed out where Widmer or the appellant in any manner sought to get out of or abandon any of the terms of the contract, except in the matter of delay, and it is admitted that appellee caused the first delay in not delivering the possession of the premises to Widmer until about the middle of November, 1924, when the contract provided that the possession of the premises should be delivered to Widmer on or before the first of September, 1924. It is

undisputed also that appellee was the cause of numerous delays in the furnishing of hardware, art glass, heat and other items, and during the late fall and early winter of 1925 and 1926, appellant's work was almost exclusively devoted to extras required by appellee, so that it becomes the main question in the case whether appellee, in equity, is entitled to recover the penalty of $50 per day as liquidated damages as provided in the contract.

Clausen, the architect, for some reason other than from the judgment of an unbiased arbiter, seems to have been determined that appellant suffer the penalty of the bond. It is said that Widmer did not in all cases make requests for delay, according to the terms of the contract, within 24 hours. Widmer made repeated requests for delay, nearly all of which were refused, and when the possession of the building plot was denied to him or kept from him for 75 days, his request for delay was ignored by the architect; but later appellee recanted and allowed him 60 days. This conduct on the part of the architect was plainly in violation of the contract and fraudulent.

In the course of the construction of the edifice in the summer and fall of 1925, it appears that Widmer made claim for extension of time on account of delays for delivery of hardware and art glass, which were refused by the architect. Following this claim for extension on account of delay in delivering art glass, the appellant's employees in the latter part of August and first part of September, 1925, were put upon the work of installing window sash in the building. Some time in the first part of September, the owner interfered with this work, and through its subcontractor, the art glass company, had the sash removed and shipped to St. Louis. There was nothing left for the carpenters to do, so the architect on September 12, 1925, issued an order for extra work in the old house

and the workmen were transferred to that place and stayed there until October 7 following, when some of the art glass came back from St. Louis. Then the art glass installation continued at intervals from that time on until January, 1926. A substantial part of it was delivered the latter part of October, so that by October 30 the building, with the exception of some few windows, was enclosed in glass. The windows without glass were nailed up with boards to keep out the cold.

It is contended by appellee that appellant has not shown that the defaults and delays caused by appellee delayed the completion of the building. Neither has appellee undertaken in any manner to show that its defaults and delays did not delay the completion of the building. The burden of proof on this question, where appellee is seeking to recoup damages, is upon appellee. (*Galbraith v. Chicago Architectural Iron Works,* 50 Ill. App. 247; *Snell v. Cottingham,* 72 Ill. 161, 171.)

A set-off or recoupment by way of counterclaim is an action in the nature of which the defendant is the plaintiff and he must establish his rights as upon a distinct action, and if the action be for breach of contract must show that he himself is not in default as to the agreement. (*Carterville Mining Co. v. Eldridge,* 199 Ill. App. 534, 535; *Cincinnati, Indianapolis & Western Ry. Co. v. Baker,* 130 Ill. App. 414; *Albrecht v. Dillon,* 224 Ill. App. 421; *Adlard v. Muldoon,* 45 Ill. 193, 195.) The burden of proof is on the party claiming such damages, to prove that such damages were caused by default of the party to be charged, separate from any damages that may have resulted from act of claimant. (*City of Elgin v. Welch,* 16 Ill. App. 483; *Walsh v. North American Cold Storage Co.,* 260 Ill. 322, 327; *Weeks v. Little,* 89 N. Y. 566, 569.) The appellee, The First Baptist Church, cannot recover damages by way

of recoupment when it was in default on the contract and contributed to the delay. (*Sage v. Purcell Co.,* 90 Ill. App. 160, 165; *Carterville Mining Co. v. Eldridge,* 199 Ill. App. 534; *Sundstrom v. Weinrich,* 207 Ill. App. 313; *Sperry v. Fanning,* 80 Ill. 371, 373; *Belden v. Woodmansee,* 81 Ill. 25; *Regnell v. Meiswinkel Co.,* 191 Ill. App. 238.) It is incumbent upon one erecting a building to keep the work in such a state of forwardness as to enable the contractors to complete their work within the time limit. (*Taylor v. Renn,* 79 Ill. 181, 185.) Where the owner fails to deliver the site of the work free of obstructions within the time specified and thereafter accepts the work, the owner waives any and all right to liquidated damages provided in the contract for delay on the part of the contractor. *Strobel Steel Const. Co. v. Sanitary District of Chicago,* 160 Ill. App. 554, 559. If the owner or his subcontractors interfere with the work of the contractor or delays it, the owner is estopped from claiming damages for delay in construction. *Regnell v. Meiswinkel Co.,* 191 Ill. App. 238. Where the delay is caused by extra work or changes ordered by the architect, claims of the owner for damages for delays will not be allowed. (*Stresenreuter Bros. v. Bowes,* 233 Ill. App. 143; *Raymond Concrete Pile Co. v. Hartman Furniture & Carpet Co.,* 187 Ill. App. 426; *The Bloomington Hotel Co. v. Garthwait,* 227 Ill. 613.)

It follows that the court below erred in allowing to appellee $7,400 damages for delay in not completing the work on or before February 19, 1926. Based upon the same reasoning, it was not error that the court did not allow to appellant the items amounting to $2,202.67 for damages on account of the delay of the owner. This claim was made up of additional expense incurred by appellant for salary of the construction superintendent, Hess, who, it was claimed, had nothing to do while the art glass was in St. Louis and again

when he was laid off in the months of November and December for the lack of heat. The item also includes the salary of Neubauer, general superintendent of appellant company, and his expenses, from the first part of December until after Christmas, and some other items of delay claimed to have been caused by appellee.

It cannot be claimed by appellant that the Widmer contract was performed without any delay on the part of the contractor, inasmuch as Widmer died on July 24, 1925, and the work was stopped completely until August 24 and 25 following, when appellant, after having been notified, secured the carpenters and plasterers and had them back at work upon the construction. This change necessitated a month's delay in the completion of the work and appellant and the contractor, having caused a portion of the delay in the completion of the work, are not in a position to claim damages from appellee for its delay, where both parties have contributed to the delay, for the reasons heretofore stated.

Appellant further assigns error on the ground that the chancellor refused to allow a claim of $327.50 for painting plaster in the auditorium and lobby where terra cotta was eliminated. The original contract called for terra cotta on the walls and columns up 22 feet in the auditorium and hallways, but on January 24, 1925, The First Baptist Church, appellee, elected to change terra cotta to plaster. Nothing was said about painting the plaster in the order of change. The subcontractor on painting had no notice of this change, and charged extra for it. When the order for it was given, it was claimed as extra. The reasonable and customary charge for this painting amounted to $281. It is not shown anywhere that the painting was ordered by the architect and was properly disallowed.

Appellant assigns error because the court refused to allow interest on the amount found due appellant

from the date the balance was payable. This was error. The right to interest on mechanic lien demands is controlled by the Mechanics' Liens Act and not by the statute on interest, and the claimant is entitled to interest at the legal rate from the time the money is due under the contract. (¶ 1, ch. 82, Cahill's Rev. Stat. 1929; *McDonald v. Patterson & Co.*, 186 Ill. 381 [affirming 84 Ill. App. 326]; *Walsh v. North American Cold Storage Co.*, 260 Ill. 322.) The amount of interest, in accordance with the statute, should be computed on the balance found due and payable from April 13, 1926, and added to the decree as modified in this opinion.

Appellee has filed an assignment of errors and the first is as follows: ''If both parties agree by their contract in writing that the final payment is due only upon the final certificate of the architect, and that his finding shall be conclusive, can a suit be maintained where such final certificate is not produced and same has not been waived?'' In other words, appellee insists that the actual letter of the contract should be carried out, regardless of the conduct of either party in relation thereto.

Upon the 13th day of March, 1926, the trustees of appellee, in writing, accepted the church building as completed, preserving their rights therein to have certain minor matters, such as a radiator shield, grading of lot and removing rubbish, etc., about which there is no contention, cared for. This action was taken by the trustees of the church upon their own initiative and without consultation with the architect. He was ignored. The contract provides that final payment shall be made within 30 days after the contract is fulfilled. The 30 days expired on April 12, 1926. On April 13, 1926, a meeting was held at the National Bank of Decatur, at which meeting there were present Mr. Neubauer and the attorney for appellant, the trustees of the appellee, The First Baptist Church, the

architect and attorneys for the church. An effort to arrive at a settlement took place. At the meeting the architect had before the board of trustees a statement of the account showing a balance due appellant from appellee in the sum of $776.38, in which account appellant was charged the sum of $8,350 for 167 days' delay in completing his contract. The attorney for the appellant stated that the time of settlement, 30 days after acceptance of the building, had expired, and unless the building was paid for appellant would have to take court action. He submitted a statement showing the company's bill against the church. No demand by the church board for an architect's certificate was made at that meeting. A bill was presented by Neubauer of from $10,000 to $12,000. The trustees were willing to pay $6,000 as testified to by the witness Gregory, cashier of the bank. No mention of an architect's certificate was made by anyone. The architect did present a full statement of the account from his point of view. No settlement was made. The trustees had taken out of the hands of the architect the matter of granting extensions of time in some instances. The trustees had accepted the fulfilment of the contract without consulting the architect. This suit was commenced April 30, 1926. On May 4, the architect issued a form certificate, in accordance with the account he had presented, stating that appellant was entitled to receive a final payment of $776.38 for the completion of the contract. It is claimed that this suit was prematurely brought and that appellant is entitled to recover nothing because suit was commenced before any final certificate was issued. We cannot agree with this contention. The church building, having been accepted and all of the parties having met to accomplish an adjustment or settlement, the submission by the architect of all the figures and accounts, showing a balance due appellant, amounted to a final certificate, if the form of a final certificate be necessary.

When the appellant's representatives at the meeting in the National Bank of Decatur on April 13, 1926, made demand of the owner for final settlement, and the same was refused on other grounds, and no request was made for the architect's final certificate, the owner waived the production of the certificate. (*Downey v. O'Donnell,* 92 Ill. 559, 563; *Lohr Bottling Co. v. Ferguson,* 122 Ill. App. 270, 272 [affirmed, 223 Ill. 88]; *Masek v. Chmelik,* 169 Ill. App. 589, 591; *Supreme Lodge O. M. P. v. Meister,* 204 Ill. 527; *Kleinschnittger v. Dorsey,* 152 Ill. App. 602.) The duty to produce an architect's certificate as a condition precedent to payment may be released by his nonaction or failure to act when the final figures were requested. *Vermont Street M. E. Church v. Brose,* 104 Ill. 206, 218. The fact that the meeting at which demand for payment was made and no request made by the owner for final certificate, was a meeting to settle the differences of the parties, does not render the evidence inadmissible. Such evidence has been considered by the courts. *The Bloomington Hotel Co. v. Garthwait,* 227 Ill. 613, 629. While an offer of compromise is not in itself admissible, independent admissions or statements of the facts made during the meeting may be given in evidence against the party making them. (*Hook v. Bunch,* 180 Ill. App. 39, 41; *Kuhn v. Williams,* 124 Ill. App. 390, 393.) Any act of the owner under a building contract which prevents the contractor from obtaining the certificate, or any conduct showing that he has waived such provision, will release the contractor from the duty of procuring such certificate. (*Kleinschnittger v. Dorsey, supra.*)

Appellee's second and third assignments of errors are as follows: ''If, by the terms of the contract, the architect is made the adjuster of all differences arising in the course of the construction of the building between the builder and the owner, as he is in this case,

can the court substitute its findings in the place of those of the architect in regard to such controversies?

"In the absence of any fraud or unfairness on the part of the architect can there properly be any other evidence of the amount due from appellee to appellant than the final certificate of the architect, as contracted by the parties?"

It is sufficiently plain that neither the master nor the chancellor followed the findings of the architect, but in several instances found that his findings were arbitrary and unfair, amounting to constructive fraud. What we have said upon that subject should be sufficient. It cannot be out of place to quote definitions of fraud given in Corpus Juris, vol. 26, 1059: "Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another. Fraud has also been defined as any cunning or artifice used to cheat or deceive another. However, the wisdom of an exact legal definition of fraud has been questioned, and it has been stated that fraud is better left undefined, and some courts have said that the common law not only fails to define fraud but perhaps asserts as a principle that there shall be no definition. Further it is frequently stated that owing to the multiform character of fraud and the great variety of attendant circumstances no definition which is all inclusive can be framed, but each case must be determined on its particular facts." And again in the same volume of Corpus Juris, page 1061: "Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of con-

structive fraud. An intent to deceive is an essential element of actual fraud. The presence or absence of such an intent distinguishes actual fraud from constructive fraud.''

In the opinion of this court the conduct of the architect in many instances was arbitrary, unfair and prejudicial and amounted to a constructive fraud, and this court, the same as the master and the chancellor, has not felt bound by his determinations, and the cross assignment of errors by appellee should be and is overruled.

It is argued by appellee that the mere fact that the building was turned over to the owners is not a waiver of the architect's certificate, nor of any of appellee's rights under the contract, which may be conceded. And appellee further contends that this is a chancery proceeding and that all equitable principles apply, by which this court has sought to be guided in this case.

As to the minor matters not completed at the time the trustees accepted the building, not argued by appellee, and no proofs having been submitted as to the expense of completing or failure to complete the minor matters, the rule is that a substantial compliance with a construction contract is sufficient, and recovery may be had thereon even though there may be technical or unimportant omissions or defects. (*Peterson v. Pusey,* 237 Ill. 204, 209; *Shepard v. Mills,* 173 Ill. 223; *Evans v. Howell,* 211 Ill. 85; *Erikson v. Ward,* 266 Ill. 259, 264; *Kleinschnittger v. Dorsey,* 152 Ill. App. 598, 603.) The test is whether a substantial sum is required to complete the work. (*Errant v. Columbia Western Mills,* 195 Ill. App. 14.)

Upon a full reading of the record, this court is impressed that the attempt to charge appellant penal damages in this case to the amount of $7,400 for delays and defaults, to which appellee was the greater contributor, is inequitable and unconscionable and is not compatible with the principles of equity.

It follows that the decree of the circuit court of Macon county should be and is reversed and the cause remanded to that court, with directions to enter a decree in favor of the appellant and against the appellee for the sum of $10,907.06, with interest thereon in accordance with the Mechanics' Liens Act from April 13, A. D. 1926, to the date of the entry of the decree hereafter in said circuit court of Macon county, and that by said decree appellant have the relief prayed for in his bill of complaint.

*Reversed and remanded with directions.*

